IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI DRING and
NANCY ASARO

             Plaintiffs

v.

ARIEL LAND OWNERS, INC.,
             Defendant

No. 3:15-CV-00478 ARC
(Judge Caputo)

(ELECTRONICALLY FILED)

## BRIEF OF DEFENDANT, ARIEL LAND OWNERS, INC., IN SUPPORT OF ITS MOTION TO REQUIRE PLAINTIFFS, LORI DRING AND NANCY ASARO, TO MAKE AN ELECTION OF REMEDIES

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

This action involves Lake Ariel, a non-navigable body of water in Wayne County, Pennsylvania. The Plaintiffs are Lori Dring and Nancy Asaro ("Dring and Asaro") who own property bordering the Lake and a strip of the west shore lake bed lying between the natural margin of the Lake at 1423.5 feet above sea level and the high water mark of 1425.9 feet above sea level (the "West Shore Strip"). The Defendant, Ariel Land Owners, Inc. ("ALO"), owns the lake bed of Lake Ariel and has a prescriptive easement over the West Shore Strip.

In prior litigation between the parties, to wit, Ariel Landowners, Inc. vs. Lori Dring, et al., civil action number 3:CV-01-0294, ALO and Dring and Asaro litigated various issues relating to ownership, control and use of the Lake. The

issues in that case were: (1) did ALO own Lake Ariel to the 1425.9 high water mark?; (2) did Dring and Asaro own a strip along the western shore of the lake bed of Lake Ariel between 1423.5 and 1425.9 feet above sea level?; (3) if the answer to question 2 was yes, did the West Shore Property Owners[1] have a prescriptive easement to continue to use the West Shore Strip for docks, boathouses, and recreation?; (4) if the answer to questions 2 was yes, did ALO have a prescriptive easement to maintain the water level of the Lake at a level of 1425.9 feet covering the West Shore Strip?; (5) did Dring and Asaro have the right to use Lake Ariel by virtue of ownership of property on the Lake, or ownership of property under the Lake?; (6) did Dring and Asaro obtain a prescriptive easement to use the Lake from Robert Swingle, from whom they purchased property on the Lake?; and (7) was the southwest part of Lake Ariel, known as Mud Pond, a separate body of water?

Some of the issues in the prior litigation were decided by the Court in a September 30, 2005 Summary Judgment Memorandum and Order.  Other issues were decided by the Court in a January 18, 2008 Memorandum and Order after a non-jury trial.  See <u>ALO v. Dring, et al</u>, 3:CV-01-0294 (M.D. Pa. January 18, 2008) (Caputo, J.) (Doc. 242) *aff'd* <u>ALO v. Dring, et al.</u>*,* 08-3802, 08-3863, (3d.

---

[1] The West Shore Property Owners are owners of real property on the western shore of Lake Ariel and Mud Pond. They are also the named Plaintiffs in a companion action in this Court docketed at 15 CV 950.

2

Cir. March 15, 2010) (hereinafter "Memorandum").  Other parts of the dispute between the parties were resolved in a Settlement Agreement ("Agreement") entered into during the non-jury trial.

The Agreement involved ALO, Dring and Asaro, and the West Shore Property Owners.  It set forth obligations between ALO and Dring and Asaro and separate obligations between Dring and Asaro and the West Shore Property Owners.

As to the obligations owed by ALO to Dring and Asaro, the Agreement generally required (1) ALO to provide Dring and Asaro with four (4) lake rights, and (2) ALO to provide Dring and Asaro with a permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel at the end of Cardinal Lane.  In relevant part, the easement provided by ALO was to allow Dring and Asaro to construct and maintain a dock and, further, to allow for parking of four (4) automobiles on Cardinal Lane.  The size and configuration of the dock was subject to ALO's approval, consistent with customary policies and procedures of ALO.

Dring and Asaro's obligations to ALO were to: (1) subdivide the West Shore Strip into two (2) sections, the North Strip and the South Strip.  The North Strip extended in a southerly direction along the West Shore Strip to the southerly property line of the Gillespie property.  Dring and Asaro were required to obtain

subdivision approval from Lake Township for this subdivision. Dring and Asaro were required to convey ownership of the North Strip to ALO, subject to an easement granted to ALO by Dring and Asaro. Dring and Asaro were required to grant ALO an easement to maintain the water level of Lake Ariel and Mud Pond to an elevation of 1425.9 feet over the South Strip. The ownership of the South Strip was not resolved in the Agreement.

The specific provisions in the Agreement reflected the following obligations of Dring and Asaro to ALO and corresponding obligations of ALO to Dring and Asaro. Dring and Asaro were required to grant ALO a permanent easement over the North Strip which would allow ALO access to Lake Ariel and Mud Pond and to maintain docks or boathouses on the North Strip. Both Dring and Asaro and ALO were required to, and did in fact, release all claims against each other with prejudice.

Unfortunately, the Agreement entered between the parties on August 28, 2006 has not been fully performed and this litigation and companion litigation, Gillespie, et al. vs. Dring and Asaro, 3:15-CV-00950, have been filed in the United States District Court for the Middle District of Pennsylvania.

In the instant case, Dring and Asaro claim that ALO failed to meet its obligations under the Agreement by failing to provide them with the various lake rights and easements provided for therein. ALO is defending the case alleging that

4

Dring and Asaro have breached the Agreement by: (1) failing to provide ALO with title to the northerly part of the West Shore Strip; (2) failing to provide the West Shore Property Owners with an easement over the West Shore Strip; (3) failing to provide ALO with a dock configuration in accordance with ALO's customary policies and procedures.  ALO further contends that the performance of the Agreement is not yet due because under the Agreement terms, performance by ALO is not due until Dring and Asaro obtain permission from Lake Township to subdivide the West Shore Strip into the northerly and southerly parts, which they have not done.

In the companion action, the West Shore Property Owners allege that they have performed their part of the settlement agreement and that Dring and Asaro are required to convey them easements over the northerly portion of the West Shore Strip.  Dring and Asaro have defended the companion action on the grounds that ALO's obligation to provide them with lake rights and easements was a condition precedent to their obligation to provide the West Shore Property Owners with an easement over the West Shore Strip.

Case management conferences have occurred in this action and in the companion action.  Both cases are now in the discovery stage.

<u>STATEMENT OF QUESTION INVOLVED</u>

ALO submits that Dring and Asaro are taking inconsistent positions in this action and in the companion action.  In this action, Dring and Asaro contend that the Agreement is a binding contract and they seek damages from ALO for its breach.  In the companion action, Dring and Asaro contend that the Agreement is not binding and that they are excused from performance of their obligations under it because of ALO's alleged failure to perform its obligations under the Agreement.

The position of Dring and Asaro in this action that they are entitled to damages for breach of the Agreement and their position in the companion action that they are excused from performance of the Agreement and, in fact, entitled to rescind it are inconsistent remedies.  In its motion, ALO requests that the Court require Dring and Asaro to make an election between these two (2) inconsistent remedies and to choose either to contend that the Agreement is valid and pursue their claim against ALO for damages or to choose that they are excused from performance under the Agreement and, on that basis, defend the action filed by the West Shore Property Owners.

ALO also requests that the Court require Dring and Asaro to make the election of remedies before the parties are forced to engage in extensive discovery on these inconsistent remedies.

Thus, the matter presents the following issues:

6

1. Should Dring and Asaro be required to make an election of remedies between damages for breach of the Agreement and rescission of the Agreement?

   *Suggested Answer:*  Yes

2. Should Dring and Asaro be required to make said election at this time?

   *Suggested Answer:*  Yes.

**A<span>RGUMENT</span>**

1.   D<span>RING AND</span> A<span>SARO ARE REQUIRED TO MAKE AN ELECTION OF REMEDIES</span> <span>BETWEEN DAMAGES FOR BREACH OF THE</span> A<span>GREEMENT AND RESCISSION</span> <span>OF THE</span> A<span>GREEMENT</span>

In <u>Wedgewood Diner v. Good</u>, 534 A.2d 537 (Pa. Super. 1987), Judge

Wieand defined the Election of Remedies Doctrine as follows:

> An election of remedies has been defined as the act of choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts.  The phrase has also been used in a more restrictive sense to denote the doctrine that the adoption, by an unequivocal act, of one of two or more inconsistent remedial rights has the effect of precluding a resort to the others.  The doctrine has frequently been regarded as an application of the law of estoppel, on the theory that a party cannot, in the assertion or prosecution of his rights, maintain inconsistent positions, and that where there is a choice of two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other…
> <u>Id</u>. at 538 *citing* 40 ALR 4th 627, 630-631.

The facts in <u>Wedgewood</u> are instructive.  In that case, John and Sharon

Sisko ("Siskos") intended to start a diner business and purchased a dining car for

7

$224,000.00.  They placed the diner on a tract of land owned by Mervin Ebersole

("Ebersole") leasing the land from him for a period of ten (10) years with an option

to buy.  They also borrowed the sum of $65,000.00 from Ebersole to meet other

expenses of starting the business.

In order to alleviate the cash flow problem which developed after the diner

had been opened, the Sisko's accountant, John Good ("Good"), went to Ebersole

and suggested he obtain an Industrial Development Authority loan for the Siskos

which would enable them to consolidate their loans while enabling him to obtain

additional security for his loan to the Siskos.  Ebersole then borrowed $450,000.00

from the Industrial Development Authority and loaned the money to the Siskos.

As part of the transaction, title to the diner and also title to the furnishing and

utensils were transferred to Ebersole for a nominal consideration and he, in turn,

leased them back to the Siskos.  As rent for the diner and the land on which it was

situated, the Siskos were required to pay Ebersole the sum of $5,250.00 per month

for seven (7) years.  At the end of the seven (7) year period, the Siskos had the

option to buy the diner and the land for $534,000.00.

The Siskos commenced an action against Good, who had represented both

the Siskos and Ebersole in the loan transaction.  In that action, the Siskos affirmed

their agreement with Ebersole and contended that they were entitled to recover

damages against Good because he had been guilty of professional negligence and

8

had violated his fiduciary duty in representing both parties to the transaction.  The Court awarded the Siskos $343,000.00 in damages against Good and, although the Trial Court reduced the amount of the verdict, the case was affirmed by the Supreme Court.

In a separate action against Ebersole, the Siskos sought to disaffirm and rescind their loan agreement with him.  The Trial Court allowed rescission and restructured the loan transaction to exclude Ebersole's participation and ordered restitution in the amount of $61,000.00 for monies already paid to Ebersole.  On appeal,  Ebersole contended that the action to rescind the loan transaction was barred by the prior inconsistent lawsuit which had affirmed the loan transactions and in which the Siskos had recovered from Good the additional cost needed to purchase the land and diner business.  The Superior Court agreed with Ebersole and reversed the decision of the Trial Court:

> We are constrained to agree that the rescission requested in the instant action is barred by appellees' election to affirm the transaction and recover a judgment against Good in the prior action.  If the Siskos had filed separate actions against Good and Ebersole and in each action had affirmed the loan transaction and had sought to recover damages as a consequence of the bad bargain, they could have recovered judgments against both, as permitted by *Joseph Melnick Building & Loan Ass'n v. Melnick, supra.*  In that event, they would have been entitled to only one satisfaction.  In fact, however, they affirmed the contract and recovered damages against the agent-accountant but not against the principal.  Having affirmed the contract in the action against the agent and having recovered a final judgment for damages

> therein, they cannot now turn around and rescind the very same transaction in a separate action against Ebersole.
> Id. at 487.

Dring and Asaro are attempting to accomplish exactly what the Superior Court found improper in Wedgewood v. Good.  In the instant action they are affirming the Agreement and attempting to recover damages from ALO under a breach of contract theory.  In the companion action, they are attempting to rescind the Agreement and refuse to perform their obligations thereunder.  Therefore, the remedies which Dring and Asaro seek are inconsistent and the Court should require them either to affirm the Agreement and seek damages from ALO or rescind the Agreement and fail to perform their obligations to the West Shore Property Owners.

2.   DRING AND ASARO SHOULD BE REQUIRED TO MAKE
     AN ELECTION OF REMEDIES AT THIS TIME

In Rahemtulla v. Hassam, et al, 2008 WL 2247195 (M.D. Pa. May 30, 2008), Judge Mannion (then a United States Magistrate Judge) required an election of remedies in a case in which a plaintiff was attempting to both recover damages for a breach of a partnership agreement and rescind the very same agreement. Judge Mannion pointed out that the doctrine of election of remedies stems from the principle that rescission and damages are fundamentally inconsistent remedies. Rescission is an annulment or unmaking of a contract and a restoration of the

10

status quo whereas damages are a legal remedy that involve an affirmance of a contract.  Id. at *1.

Judge Mannion further pointed out, however, that a party must generally make an election of remedies after the case is submitted to the jury.  Judge Mannion then granted the motion for election of remedies but concluded that the election would not be required until the case was submitted to the jury and a verdict entered but prior to judgment.  Id. at *2.  In his opinion, Judge Mannion pointed out, however, that "an earlier election of remedies may be required where the evidence concerning inconsistent remedies was confusing to the jury or the remedies are so fundamentally inconsistent that only an early election would suffice."  Substantial prejudice was, according to Judge Mannion, also a factor to be considered in determining when to require the election.  Id. at *2.

In his opinion, Judge Mannion cited five (5) cases in which an earlier election of remedies was required.  See Iota Mgmt. Corp. v. Boulevard Inv. Co., 731 S.W. 2d 399 (Mo. Ct. App. 1987); Harper v. Ethridge, 348 S.E. 2d 374 (S.C. Ct. App. 1986); Dopp v. HTP Corp., 947 F.2d 506 (1st Cir. 1991); Kline Hotel Partners v. Aircoa Equity Interests, Inc., 729 F. Supp. 740 (D. Colo. 1990); Sharpe v. F.D.I.C., 126 F.3d 1147 (9th Cir. 1997).

At a recent case management conference in the companion action, Robert Gawlas, who is the attorney for Dring and Asaro in both actions, indicated that

they would be taking up to 200 depositions on the prescriptive easement issue.
These depositions will be expensive and time consuming to the parties involved.
They will also be unnecessary if Dring and Asaro are required to elect and do, in
fact, elect to pursue their case for damages against ALO.  Given the fact that there
is much more at stake to ALO in that case, i.e. the acquisition of lake rights to
Lake Ariel and use of the Lake than in the companion case in which the advantage
to Dring and Asaro is the negative benefit of preventing the West Shore Property
Owners from crossing the West Shore Strip to access Lake Ariel.

ALO submits that there are factors in this case which should require an
earlier election of remedies.  The West Shore Property Owners have a second
claim for relief in the companion action in which they seek a declaration that they
have obtained an easement by prescription over the West Shore Strip due to
continued use by each of them or their predecessors in interest.  The potential 200
depositions would explore facts related to this prescriptive easement claim.  Those
facts have no bearing on the obligations under the Agreement and if Dring and
Asaro are not compelled to make an election of remedies at this point, then
considerable time and effort will be expended on issues that will become
completely irrelevant if Dring and Asaro ultimately elect to pursue their claim for
breach of the Agreement.

12

Respectfully submitted,
OLIVER, PRICE & RHODES

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esquire
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
P.O. Box 240
Clarks Summit, PA 18411
Tel: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, **Joseph A. O'Brien**, of Oliver, Price & Rhodes, hereby certify that on the

4th day of May, 2016, I served a true and correct copy of the foregoing BRIEF OF

DEFENDANT, ARIEL LAND OWNERS, INC., IN SUPPORT OF ITS MOTION TO REQUIRE

PLAINTIFFS, LORI DRING AND NANCY ASARO, TO MAKE AN ELECTION OF REMEDIES

by placing the same in the United States Mail, postage prepaid, addressed as

follows:

> Rosenn, Jenkins and Greenwald, LLP
> Garry S. Taroli, Esquire
> Robert N. Gawlas, Jr., Esquire
> 15 South Franklin Street
> Wilkes Barre, PA   18711-0075

> Respectfully submitted,
> OLIVER, PRICE & RHODES
>
> /s/ Joseph A. O'Brien
> Joseph A. O'Brien, Esquire
> Attorney I.D. No.: 22103
> Oliver, Price & Rhodes
> P.O. Box 240
> Clarks Summit, PA 18411
> Tel: (570) 585-1200
> Fax: (570) 585-5100
> Email: jaob@oprlaw.com