IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI DRING and<br>NANCY ASARO<br><div align="right">Plaintiffs</div><br>v.<br><br>ARIEL LAND OWNERS, INC.,<br><div align="right">Defendant</div> | No. 3:15-CV-00478 ARC<br>(Judge Caputo)<br><br>(ELECTRONICALLY FILED) |

---

**BRIEF OF DEFENDANT, ARIEL LAND OWNERS, INC. IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

---

### PROCEDURAL HISTORY

The Plaintiffs, Lori Dring and Nancy Asaro ("Dring and Asaro") initiated

this action with the filing of a Complaint on March 10, 2015. (REC. DOC. #1).

On April 1, 2015, the Court entered in an Order granting Dring and Asaro

21 days to amend their Complaint to show that diversity of jurisdiction existed.

(REC. DOC. #3).

On April 16, 2015, Dring and Asaro filed an Amended Complaint. (REC

DOC. #4).

On May 14, 2015, Ariel Land Owners, Inc. ("ALO") filed an Answer to the

Amended Complaint with a Counter Claim. (REC. DOC. #6).

On June 3, 2015, Dring and Asaro filed an Answer to ALO's Counter

Claim. (REC. DOC. #7).

On May 4, 2016, ALO filed a Motion to Require Dring and Asaro to Elect Remedies. (REC. DOC. #17). The Motion has been briefed by the parties and is scheduled for oral argument before the Court, on November 3, 2016 at 10:00am. (REC. DOC. #16 and #23).

ALO has filed a Motion for Summary Judgment together with supporting Affidavits. ALO submits this Brief in support of that Motion.

### STATEMENT OF FACTS

This action arises out of a longstanding dispute between Dring and Asaro, ALO and a group of individuals known as the West Shore Property Owners. The dispute involves Lake Ariel and Mud Pond, a body of water in Wayne County, Pennsylvania. (Memorandums of the Honorable A. Richard Caputo dated September 30, 2005, January 18, 2008 and August 13, 2008 attached to Malakin Affidavit as Exhibits A-1, B-1 and C-1).

ALO is a business corporation which owns a body of water in Wayne County, Pennsylvania known as Lake Ariel and Mud Pond (S.M.F. 18-19). Dring and Asaro are the owners, in excess of 89 acres of land on the western shore of Lake Ariel and Mud Pond (S.M.F. 4-7 and 16-17). The West Shore Property Owners are a group of individuals who own homes along the West Shore, north of

the property owned by Dring and Asaro (S.M.F. 21-22).

There was prior litigation between the parties in this Court. The prior litigation began with a filing of Quiet Title Action by ALO against Dring and Asaro on May 17, 1999. Dring and Asaro eventually removed the Quiet Title Action to the Middle District Court and filed a counterclaim against ALO. Dring and Asaro also joined the West Shore Property Owners as counterclaim Defendants in the prior litigation (S.M.F. 24-26).

The prior litigation presented the following issues:

1) Did Dring and Asaro have the right to use Lake Ariel by virtue of ownership of property on the lake or ownership of property under the lake;

2) Did Dring and Asaro obtain the West Shore Strip by Deeds from Wells College and Rensselaer Polytechnic Institute;

3) If it is determined that Dring and Asaro owned the West Shore Strip, did the West Shore property owners have a prescriptive easement to continue to use the West Shore Strip for docks, boathouses and recreation;

4) If it is determined that Dring and Asaro owned the West Shore Strip, did ALO have a right to maintain the water of the lake at 1425.9

3

covering the West Shore Strip;

5)    Did ALO own Lake Ariel to the high water mark; 1425.9 above sea level; and

6)    Are Lake Ariel and Mud Pond, separate bodies of water (S.M.F. 27).

Dring and Asaro and ALO filed cross motions for summary judgment. On September 30, 2005, the Court filed a Memorandum and Order granting in part and denying in part the Cross Motions for Summary Judgment filed by the parties. In its Memorandum and Order, the Court resolved issue number 1 set forth in the previous paragraph by concluding that Dring and Asaro's ownership of property on or under Lake Ariel did not give them the right to use the Lake. The other issues in the case by the Court were deferred for trial (Caputo Memorandum of September 20, 2005; Malakin Affidavit Exhibit A-1).

The trial in the prior litigation began before the Honorable Richard Caputo on August 14, 2006. Testimony was taken on August 14, 15, 16, 17, 28 and 29 (S.M.F. 29). Prior to beginning testimony on the 28th, the parties informed the Court that a partial settlement had been reached and presented to the Court a written settlement agreement reflecting the partial settlement of the issues involved (S.M.F. 30-31).

The Settlement Agreement involved ALO, Dring and Asaro, and the West

4

Shore Property Owners.  It set forth obligations between ALO and Dring and

Asaro and separate obligations between Dring and Asaro and the West Shore

Property Owners (S.M.F. 33-35).

As to the obligations owed by ALO to Dring and Asaro, the Agreement

generally required (1) ALO to provide Dring and Asaro with four (4) lake rights,

and (2) ALO to provide Dring and Asaro with a permanent easement over the

water and a parcel of land at the eastern shore of Lake Ariel at the end of

Cardinal Lane. In relevant part, the easement provided by ALO was to allow

Dring and Asaro to construct and maintain a dock and, further, to allow for

parking of four (4) automobiles on Cardinal Lane.  The size and configuration of

the dock was subject to ALO's approval, consistent with customary policies and

procedures of ALO (S.M.F. 34).

Dring and Asaro's obligations to ALO were to: (1) subdivide the West

Shore Strip into two (2) sections, the North Strip and the South Strip. The North

Strip extended in a southerly direction along the West Shore Strip to the southerly

property line of the Gillespie property. The time for performance in the Settlement

Agreement was set at 30 days after Dring and Asaro obtained the subdivision

approval referred to in the previous paragraph (S.M.F. 35).

Subsequently, the Settlement Agreement was amended to provide that the

5

application for approval to subdivide the West Shore Strip into northerly and southerly parts within 60 days after a final non-appealable decision had been entered in the lawsuit and that the performance should occur within 30 days after obtaining the subdivision approval (S.M.F. 37; Malakin Affidavit Exhibit H and M).

The issues that were raised are not resolved in the Court's Summary Judgment Memorandum Order of September 30, 2005 or in the Settlement Agreement and were decided by the Trial Court in February of 2008 (S.M.F. 44).

The judgment of the Trial Court was affirmed by the Court of Appeals in March of 2010 (S.M.F. 45).

Dring and Asaro had applied for subdivision approval on January 10, 2007 before the final decisions of the District Court and the Court of Appeals (S.M.F. 38). Their application was referred to the Wayne County Planning Commission which commented on the application on January 19, 2007 (S.M.F. 41). Dring and Asaro placed the application on hold on February 22, 2007 (S.M.F. 42).

Despite the provisions of the Settlement Agreement, which required that Dring and Asaro submit a subdivision after the final decision of the Court of Appeals, Dring and Asaro did not reinstate or resubmit their application at any time after the Court of Appeals affirmed the decision of the District Court in

6

March of 2010 (S.M.F. 46-47 and 55).

Over 50 months after the decision of the Court of Appeals, Gary Taroli, counsel for Dring and Asaro, wrote to Joseph O'Brien, counsel for ALO, and erroneously informed him that "the western shore strip has been subdivided" (S.M.F. 49). Subsequently, on October 18, 2014, Taroli unilaterally scheduled a closing for the parties to perform the Settlement Agreement for November 18, 2014 (S.M.F. 50).

ALO informed Dring and Asaro that it would not be attending the closing because Dring and Asaro had not obtained the subdivision approval necessary to transfer the West Shore Strip to ALO (S.M.F. 51).

On December 29, 2014, six months after Dring and Asaro had erroneously informed ALO five weeks after the closing was unilaterally scheduled by Dring and Asaro and requested an opinion from the Township that subdivision approval was not necessary (S.M.F. 52).

The Township, through its Solicitor, David Gromelski, responded on January 27, 2015 indicating that subdivision approval was not required. Gromelski indicated that the basis of the Township's conclusion was that the West Shore Strip was a standalone parcel (S.M.F. 53).

Subsequently, Gromelski determined that the West Shore Strip was not

a stand alone parcel but was actually three separate parcels, created by three separate deeds and that the proposed subdivision of the West Shore Strip into a northerly and southerly section would require a division of the southerly most parcel of the Strip (S.M.F. 54).

On August 4, 2016, the Township informed Dring and Asaro that subdivision approval for the West Shore Strip was required and that Dring and Asaro should submit an application for such approval with the Township. The Township informed Dring and Asaro that its prior advice that subdivision approval was not required was based on erroneous information submitted by Dring and Asaro that the entire West Shore Strip was being transferred to ALO and that the division of the strip, into a northerly and southerly part, did not involve the division of a parcel of land (S.M.F. 55).

## STATEMENT OF QUESTIONS INVOLVED

1.      Does the record in this case contain any genuine factual dispute whether Dring and Asaro were obligated to obtain subdivision approval to transfer the northerly portion of the West Shore Strip to ALO before ALO was obligated to perform its obligations under the Settlement Agreement.

2.      Assuming that no such genuine factual dispute existed, is ALO entitled to judgment as a matter of law on Dring and Asaro's claim that ALO

breached the terms of the Settlement Agreement by failing to perform on November 18, 2014.

## SUMMARY OF ARGUMENT

ALO contends that Dring and Asaro were obligated under the terms of the Settlement Agreement to obtain West Shore Strip subdivision approval from Lake Township before ALO was obligated to perform its obligations under the Settlement Agreement. ALO also contends that Dring and Asaro were so obligated to obtain such approval and that they did not do so. Based on these facts, ALO submits that it is entitled to judgment as a matter of law on Dring and Asaro's claim that ALO breached the Settlement Agreement by not performing on November 18, 2014.

## ARGUMENT
## STANDARD FOR SUMMARY JUDGMENT

Summary Judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Write v.*

9

*Coming*, 679 F.3d 101, 103 (3d Cir. 2012). A fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable

substantive law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). Where there is no material fact in dispute, the

moving party need only establish that it is entitled to judgment as a matter of law.

See *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996).

### THE RECORD IN THIS CASE CONTAINS NO GENUINE DISPUTE OF FACT AS TO WHETHER DRING AND ASARO WERE TO OBTAIN SUBDIVISION APPROVAL TO TRANSFER THE NORTHERLY PART OF THE WEST SHORE STRIP TO ALO BEFORE ALO WAS REQUIRED TO PERFORM ITS OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT.

Settlement Agreements are regarded as contracts under Pennsylvania law

and must be considered pursuant to the general rules of contract interpretation.

*Miller v. Ginsberg*, 874 A.2d. 93, 99 (Pa Super 2005); *Friia v. Friia*, A.2d. 664,

668 (Pa. Super 2001). These principals are well-settled:

> [T]he intent of the parties to a written contract is contained in the
> writing itself. Where the intention of the parties is clear, there is no need to
> resort to extrinsic aids or evidence, instead, the meaning of a clear and
> unequivocal written contract must be determined by its contents alone.
> Where language is clear and unambiguous, the focus of interpretation is
> upon the terms of the agreement as manifestly expressed, rather than as,
> perhaps, silently intended. Clear contractual terms that are capable of one
> reasonable interpretation must be given effect without reference to matters
> outside the contract *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247
> F.3d 79, 92-93 (3d Cir. 2001).

In the case at bar, the contractual provision that Dring and Asaro must obtain West Shore Strip subdivision approval prior to ALO being obligated to perform its obligations under the Settlement Agreement is clearly set forth both in the Settlement Agreement and the Amendment thereto (Malakin Affidavit H and M). There is no ambiguity about this provision and no need for extrinsic evidence. The Court should give it effect.

Dring and Asaro's contractual obligation to obtain subdivision approval mirrors the law. Both the Township Subdivision Ordinance, which also requires approval of all subdivision in the Township, and the Municipalities Planning Code define subdivision, in pertinent part, as "the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcel or other divisions of land, including changes in existing lot lines for the purpose…of transfer of ownership…." (Malakin Affidavit Exhibit D-1); 53 PS 10107. Paragraphs 56 through 64 and the Durkovic Affidavit conclusively establish that a subdivision of the West Shore Strip into a northerly and southerly section would require the division of the Jeremiah Barnes portion of the strip into two parts. This division is being made in order to transfer the north strip to ALO. Thus, subdivision approval is clearly required.

It should also be noted that Judge Caputo, to whom the Settlement Agreement was submitted, had occasion to analyze the subdivision provisions in

11

his memorandum and order of January 2008 in which he decided the remaining issues in the case. The Court pointed out on page six of his Memorandum:

> "Paragraph 2 of the Settlement Agreement executed on August 28, 2006 states that Asaro/Dring agreed to subdivide the strip of land along the western shore of Lake Ariel along the southerly property line of Lot 48, Block owned by Maryann Gillespie.
>
> The subdivision line at the southerly property line of Lot 48 falls well within the parcel of land originally conveyed from Weston to Jeremiah Barnes.
> (Malakin Affidavit page A-1 and A-6)

ALO submits therefore, that the obligation of Dring and Asaro to obtain the West Shore Strip subdivision approval is not only provided for in the Settlement Agreement but is also required by Pennsylvania law. ALO requests therefore, that the Court conclude that Dring and Asaro were so obligated.

### THE FAILURE OF DRING AND ASARO TO OBTAIN SUBDIVISION APPROVAL TO TRANSFER THE WEST SHORE STRIP TO ALO EXCUSES ALO FROM PERFORMING ITS OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT AND ENTITLES ALO TO JUDGMENT AS A MATTER OF LAW

The three legal arguments support ALO's contention that it is entitled to judgment as a matter of law in this case.

Under Pennsylvania law, a party asserting a breach of contract must establish (1) the existence of a contract (2) a breach of duty imposed by the contract and (3) damages. *More v. Angies List,* 118, F. Supp 3d. 802, 818 (E.D. Pa

2015); J. F. Walker Company, Inc. v. Excalibur Oil Group, Inc. 792 A2d. 1269, 1272 (Pa Super. 2002); 12 P.L.E. Contracts §462 P. 472. In this matter, the Settlement Agreement as amended, requires ALO to perform "within thirty days" after Dring and Asaro obtain subdivision approval. Dring and Asaro never obtained such approval and therefore, ALO did not, as Dring and Asaro allege in the Complaint, have a duty to perform on November 18, 2014 and did not breach the Agreement on that date.

Pennsylvania law also requires a party who seeks to recover damages for a breach of contract to prove that he has performed all of his own obligations under the contract. *Trumbill Corporation v. Boss Contraction, Inc.,* 801 A.2d 1289, 1292 (Pa. Cmwlth 2002). A party to a contract who has materially breached it cannot complain if the other party refuses to perform its obligation under the contract. *Nicole, Inc. v. Klinger*, 603 A2d. 289, 302 (Pa Super 1992). Dring and Asaro did not perform its obligation contained in the Settlement Agreement to obtain subdivision approval for the West Shore Strip. Therefore, Dring and Asaro cannot recover from ALO for its failure to perform its obligations under the Settlement Agreement.

A condition is an event not certain to occur which must occur before performance under a contract is due. Restatement of the Law of Contracts (Second)

13

§224. Performance of a duty subject to a condition cannot become due unless the condition occurs. Id. at 225 (1); *Riley v. General Mills, Inc.* 346 F.2d. 68, 70-71 (3d Cir. 1965); 12 P.L.E. Contracts Section 446 page 436. Subdivision approval was clearly a condition of ALO's obligation to perform because ALO's performance was not due until it occurred. The condition did not occur. Therefore, ALO's performance is excused.

In summary, ALO submits that Dring and Asaro's failure to obtain subdivision approval entitles ALO to judgment as a matter of law in this matter for three reasons. First, ALO did not breach the Settlement Agreement by failing to perform on November 18, 2014 because it had no duty to perform on that date. Second, Dring and Asaro were not entitled to recover from ALO for breach of the Settlement Agreement because they did not perform their obligations thereunder. Third, subdivision approval was a condition of ALO's obligation and when it did not occur, ALO was excused from performance.

## CONCLUSION

Based on the foregoing, ALO submits that there is no genuine dispute as to the proposition as to Dring and Asaro were obligated to obtain subdivision approval for the West Shore Strip and further, that their failure to do so entitles ALO to a judgment as a matter of law.

14

Respectfully submitted,

**OLIVER, PRICE & RHODES**

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esquire
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
P.O. Box 240
Clarks Summit, PA 18411
Tel: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

### CERTIFICATE OF WORD COUNT

Pursuant to L.R.7.8(b)(2), the undersigned certifies that the Brief in Support of its Motion for Summary Judgment contains 3,234 words.

/s/ Joseph O'Brien
Joseph A. O'Brien, Esq.

16

## <u>CERTIFICATE OF SERVICE</u>

I, **Joseph A. O'Brien**, of Oliver, Price & Rhodes, hereby certify that on the

31st day of October, 2016, I served a true and correct copy of the foregoing BRIEF

IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT pursuant to the Federal Rules

of Civil Procedure, addressed as follows:

Rosenn, Jenkins and Greenwald, LLP          Michael Profita, Esquire
Garry S. Taroli, Esquire                     500 Frank W. Burr Blvd., Suite 31
Robert N. Gawlas, Jr., Esquire               Teaneck, NJ 07666
15 South Franklin Street
Wilkes Barre, PA   18711-0075

                                        /s/ Joseph A. O'Brien
                                        Joseph A. O'Brien, Esquire

P:\O'BRIEN, JOE\ARIEL LAND OWNERS\Dring & Asaro\Pleadings\Brief.Summary Judgment.docx