IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI DRING and
NANCY ASARO
                              Plaintiffs

v.                                                    No. 3:15-CV-00478 ARC
                                                      (Judge Caputo)

ARIEL LAND OWNERS, INC.,                              (ELECTRONICALLY FILED)
                              Defendant

---

**STATEMENT OF MATERIAL FACTS SUBMITTED BY DEFENDANT, ARIEL LAND OWNERS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

### LORI DRING AND NANCY ASARO

1.  This action arises out of a longstanding dispute between the Plaintiffs in this case, Lori Dring and Nancy Asaro ("Dring and Asaro"). The Defendants in this case, Ariel Land Owners, Inc. ("ALO"), and a group of individuals known as the West Shore Property Owners. The dispute involves Lake Ariel and Mud Pond, a body of water in Wayne County, Pennsylvania (Malakin Affidavit Exhibits A-1, B-1 and C-1).

2.  Dring, is an adult individual residing at 29 Sleepy Hollow Drive, Oak Ridge, New Jersey 07438. (REC. DOC. #1)

3.  Asaro, is an adult individual residing at 28 Trenton Terrace, Wayne, New Jersey. (Stipulation of Facts, TR 8115/06, P. 70). (REC. DOC. #1)

4.  Dring and Asaro are the owners in fee of in excess of 89 acres of land in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania by virtue of two conveyances recorded in the Office of the Recorder of Deeds of Wayne County. (REC. DOC. #1).

5.  The first conveyance which was from Robert M. Swingle and Irene D. Swingle, his wife, was a parcel containing 52 acres of land, in excess (hereinafter referred to as the "First Swingle Parcel"). It took place on or about September 13, 1996, by deed recorded in Wayne County Deed Book 1176 at Page 0197, *et seq*. (Malakin Affidavit Exhibit A).

6.  The second conveyance which was from Glenna J. Curtis and Marion J. Swingle was a parcel containing 34 acres of land, in excess (hereinafter referred to as the "Second Swingle Parcel") it took place on or about July 12, 2001 by deed recorded in Wayne County Deed Book 1815, at Page 0149, *et seq.* (Malakin Affidavit Exhibit A).

7.  Dring and Asaro received a Corrective Deed dated April 25, 1998 from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, which was recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 1418 at Page 139, *et seq.* (Malakin Affidavit Exhibit A).

8. The Corrective Deed dated April 25, 1998, replaced the deed from Robert M. Swingle and Irene D. Swingle for the first Swingle parcel. The reason for the corrective deed was that the original deed for the first Swingle parcel described the property conveyed to Dring and Asaro in a meets and bounds description reflecting a boundary line along the high water mark of Lake Ariel and Mud Pond. The Corrective Deed described the property conveyed to Dring and Asaro as being along the natural margin of Lake Ariel and Mud Pond (Malakin Affidavit Exhibit A).

9. In May of 2001, Dring and Asaro filed an application with the Lake Township Planning Commission and Board of Supervisors to combine the first and second Swingle parcel. (Malakin Affidavit Exhibit B).

10. The application was referred to the Wayne County Planning Commission for review. The Wayne County Planning Commission responded as follows:

> RE:   Swingle subdivision. Parcel 2 (34.33 acres) addition to adjoining Parcel 1 (52.210 acres) to form on (1) new parcel containing 86.54 acres total.

> Gentlemen:

> As per the requirements of Section 502 of Act 247, the

3

Pennsylvania Municipalities Planning Code, we have reviewed the
above referenced land subdivision located along the east side of SR
191 (Lake Ariel Hwy.) in Lake Township, Wayne County.

We have no detrimental comments on this lot addition
proposal. However, it will be important that a correct deed
description is prepared which described the entire perimeter of the
newly formed Parcel 1R containing 86.43 acres total. This will result
in a recorded deed that will coincide with the approved subdivision
plan.

Please contact our office if you have any questions.
(Malakin Affidavit Exhibit C).

11. The application was approved by the Lake Township Planning

Commission on May 29, 2001 and the Lake Township Board of

Supervisors on June 5, 2001. (Malakin Affidavit Exhibit C).

12. The approval stated as follows:

For future conveyances and/or building purposes Parcel 1 must
be combined with Parcel 2 to form one new lot and cannot be
subdivided, conveyed or sold separately or apart therefrom without
prior Township approval. Henceforth, the combined parcel shall be
known as Parcel 1R.
(Malakin Affidavit Exhibit C).

13. Subsequently, Dring and Asaro determined that the property between the

natural margin of Lake Ariel and Mud Pond and the high water mark of

Mud Pond was not part of the first Swingle parcel, had not been owned

by Swingle, and therefore was not conveyed to them through the

4

Corrective Deed. Rather, it was part of the southerly most parcel of three parcels of land owned by Wells College and Rensselaer Polytechnical Institute, known for purposes of this action as the West Shore Strip (Malakin Affidavit Exhibit D and E).

14. The West Shore Strip is also described as located between 1425.9 and 1422.5 feet above sea level (Malakin Affidavit Exhibit C-1).

15. ALO is a Pennsylvania business corporation maintaining an address within the Commonwealth of Pennsylvania at P.O. Box 503, Lake Ariel, Pennsylvania 18436 (REC. DOC #1).

16. Dring and Asaro obtained a one-third interest in the West Shore Strip, by quitclaim deed from Wells College on December 6, 2001 which is recorded in Wayne County Deed Book 1931 at page 204-208 (Malakin Affidavit Exhibit D).

17. Dring and Asaro obtained a two-thirds interest in the West Shore Strip by quitclaim Deed from Rensselaer Polytechnic Institute on November 2, 2001, which is recorded in Wayne County Deed Book at 1931 at page 209 (Malakin Affidavit Exhibit E).

**ALO**

18. ALO is a Pennsylvania business corporation maintaining an address

within the Commonwealth of Pennsylvania at PO Box 503, Lake Ariel, PA 18436 (REC. DOC. #1).

19. ALO obtained a deed to Lake Ariel and Mud Pond from virtue of a deed from A.J. Schrader, *et al.,* on April 20, 1964 which is recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 221 at Page 292, et seq. (Malakin Affidavit Exhibit A-1, B-1 and C-1).

20. ALO's ownership of Lake Ariel was confirmed on an adverse possession theory by the Honorable A. Richard Caputo in an Opinion dated January 18, 2008 in the prior litigation between the parties. Judge Caputo's opinion was affirmed by the United States Court of Appeals for the Third Circuit (Malakin Affidavit B-1 and C-1).

## WEST SHORE PROPERTY OWNERS

21. The West Shore Property owners are a group of individuals who own homes on the west shore of Lake Ariel and Mud Pond. (Malakin Affidavit Exhibit A-1, B-1 and C-1).

22. The West Shore strip is located between the property owned by the West Shore Property Owners on Lake Ariel and Mud Pond itself and Lake Ariel and Mud Pond. The west shore strip is located between 1422.5 and 1425.9 feet above sea level (Malakin Affidavit Exhibits A-1, B-1 and C-

6

1).

23. Though not parties to this litigation, the West Shore Property owners were parties to the prior litigation between the parties which is detailed herein, as well as, companion litigation pending before the Honorable Richard Caputo in the United States District Court for the Middle District of Pennsylvania. The caption of the companion litigation is Marjorie M. Gillespie et al v. Lori Dring and Nancy Asaro, 3:15-CV-00950-ARC (Malakin Affidavit Exhibits A-1, B-1 and C-1).

## THE PRIOR LITIGATION INVOLVING
## DRING AND ASARO, ALO AND THE WEST SHORE PROPERTY OWNERS

24. The prior litigation involving ALO, Dring and Asaro and the West Shore Property Owners began with the filing of a quiet title Action by ALO against Dring and Asaro on May 17, 1999. The quite title action reflected a challenge by Dring and Asaro to the Corrective Deed recorded by Dring and Asaro which is described in paragraph 7 and 8 of this Statement of Material Facts.

25. Dring and Asaro eventually removed the quiet title action to the United States District Court to the Middle District of Pennsylvania (Malakin Exhibit A).

26. Dring and Asaro answered the quiet title action after removal and joined

7

the West Shore Property Owners as counterclaim defendants in that action (Malakin Affidavit Exhibits A-1, B-1 and C-1).

27. After a long and arduous pretrial process, which involved an interlocutory interrogatory appeal, amended pleadings, pretrial motions and substantial discovery, the litigation presented the following issues:

1) Did Dring and Asaro have the right to use the Lake Ariel by virtue of ownership of property on the lake or ownership of property under the lake.

2) Did Dring and Asaro or ALO own the West Shore Strip;

3) If Dring and Asaro were determined to own the West Shore Strip, did the West Shore property owners has a prescriptive easement to continue to use the West Shore Strip for docks, boathouses and recreation.

4) If ALO were determined to own the West Shore Strip, did ALO have a right to maintain the water of the lake at a right to 1425.9 covering the West Shore Strip.

5) Did ALO own Lake Ariel to the high water mark; 1425.9 above sea level;

6) Were Lake Ariel and Mud Pond, separate bodies of water.

8

(Malakin Affidavit Exhibits A-1, B-1 and C-1).

28. Dring and Asaro and ALO filed cross motions for summary judgment. On September 30, 2005, the Court filed a Memorandum of Order granting in part and denying in part the Cross Motions for Summary Judgment filed by the parties. In said Order, the Court resolved issue number 1 set forth in the previous paragraph by concluding that Dring and Asaro's ownership of property on or under Lake Ariel did not give the Lake the right to use the Lake. The other issues raised by the Court were deferred for trial. (Malakin Affidavit Exhibit B-1).

29. The trial began before the Honorable Richard Caputo on August 14, 2006. Testimony was taken on August 15, 16 and 17, 28 and 29.

### THE SETTLEMENT AGREEMENT ENTERED INTO BY DRING AND ASARO, ALO AND THE WEST SHORE PROPERTY OWNERS

30. At approximately 3:00 pm on August 17, counsel for the parties informed the Court that the parties were discussing a potential stipulation to streamline the presentation of the case. (Malakin Affidavit Exhibit W).

31. The trial reconvened on August 28, 2016. At that time counsel presented to the Court a Settlement Agreement through which the parties agreed to resolve some of the issues in the case (Malakin Affidavit Exhibit X).

32. The trial concluded on August 29, 2016. (Malakin Affidavit Exhibit B-

1).

33. The Settlement Agreement involved ALO, Dring and Asaro, and the West Shore Property Owners.  It set forth obligations between ALO and Dring and Asaro and separate obligations between Dring and Asaro and the West Shore Property Owners. (Malakin Affidavit Exhibit H and N).

34. As to the obligations owed by ALO to Dring and Asaro, the Agreement generally required (1) ALO to provide Dring and Asaro with four (4) lake rights, and (2) ALO to provide Dring and Asaro with a permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel at the end of Cardinal Lane. In relevant part, the easement provided by ALO was to allow Dring and Asaro to construct and maintain a dock and, further, to allow for parking of four (4) automobiles on Cardinal Lane.  The size and configuration of the dock was subject to ALO's approval, consistent with customary policies and procedures of ALO. (Malakin Affidavit Exhibit H and N).

35. Dring and Asaro's obligations to ALO were to obtain subdivision approval (1) subdivide the West Shore Strip into two (2) sections, the North Strip and the South Strip.  The North Strip extended in a southerly

direction along the West Shore Strip to the southerly property line of the

Gillespie property.  Dring and Asaro were also required to convey the

north strip to ALO. (Malakin Affidavit Exhibit H and N).

36. Dring and Asaro hired William Schoenagel to obtain the West Shore

Strip subdivision approval. Schoenagel wrote to Dring and Asaro

counsel, Gary Taroli on January 2, 2007 as follows:

> I have been working on the subdivision maps for the transfer
> from Asaro/Dring to ALO. I expect to complete the maps and
> ready for submission to the Township by at least the end of this
> week. The project involves five different maps and quite a bit of
> detail needed from the Township. That is no excuse and I apologize
> for the long delay. I will have this submitted shortly. The maps
> must be submitted to the Township for review, they may want
> those 10 days ahead. The planning Commission meeting is the last
> Tuesday of the month. Typically the plans get reviewed at the
> Planning Commission meeting and then sent to the County
> Planning Commission for review. I then go back to the next
> Planning Commission after addressing the County and the
> Township concerns. Then I attend the Supervisors Meeting about a
> week later and would expect to get final approval. Certain
> townships allow the maps to be sent to the County early. I will
> confirm this. If they are sent early and I get comments back early
> enough to respond to it shortens the review by a month. I will send
> a copy to you before I submit the maps so you can review them. I
> will keep you informed as we go along.

(Malakin Affidavit Exhibit I).

37. The Settlement Agreement was amended in August of 2007. The reason

for the Amendment was set forth in a letter of Joseph O'Brien, counsel

11

for ALO, ("O'Brien") to Michael Profita ("Profita"), counsel for Dring

and Asaro which stated in relevant part as follows:

> The Settlement Agreement called for Deeds and other instruments to be exchanged by the parties at a mutually convenient time within 30 days after obtaining subdivision approval of the Western Shore Strip, as set forth in paragraph 2 of the Settlement Agreement.

> It is my understanding that a delay has been encountered in obtaining subdivision approval from Lake Township. I have been informed that when William Schoenagel submitted the application to subdivide the West Shore Strip into two portions, Township Officials pointed out that neither parcel would meet the two acre minimum requirement of a lot, as set forth in the Subdivision Ordinance. It was then suggested that the Northern part of the West Shore Strip would be combined with the lands of ALO (specifically the body of water known as Lake Ariel) to form one new lot, so that the North part of the West Shore Strip could not be conveyed separately from the Lake.

> The remaining problem, as I understand it, pertains to the Southerly portion of the West Shore Strip. The Southerly portion of the West Shore Strip will be combined with other lands of Asaro and Dring if it is ultimately determined by the Court that Asaro and Dring have a valid claim of ownership to the Southerly portion of the West Shore Strip. However, if the Court's decision on that issue is favorable to ALO, then the Southerly portion of the West Shore Strip will be combined in title with the body of water of Lake Ariel

38. On January 10, 2007, William Schoenagel filed a subdivision application

with the Wayne County Department of Planning. In his cover letter, Mr.

Schoenagel stated:

> Please review the enclosed Subdivision map in Lake Township. This map shows the result of a lawsuit between Dring/Asaro and Ariel Land Owners, Inc. I have enclosed the Settlement Agreement.  A narrow strip of land was acquired by Dring/Asaro that

runs along the western shore of Lake Ariel. The piece of this property in front of the lots is being subdivided from the remainder. I have submitted the plans with a Form B waiver for the sewage.

(Malakin Affidavit Exhibit J).

39. A map submitted with the plan showed a meets and grounds description of the southerly part of the West Shore Strip beginning at the southerly side of the Mathews Property Lot 48. (Malakin Affidavit Exhibit J).

40. On January 13, 2007, the Lake Township Supervisors wrote to the Wayne County Department of Planning:

> The Lake Township Planning Commission and Board of Supervisors have received the attached proposed subdivision. Please review the map and supportive documentation at your earliest convenience and forward your findings to the Lake Township Office.

(Malakin Affidavit Exhibit K).

41. On January 19, 2007, the Wayne County Department of Planning responded with comments to the subdivision application with the following comments:

> As per the requirements of Section 502 of Act 247, the Pennsylvania Municipalities Planning Code, we have reviewed the above referenced land subdivision located along the western shore of Lake Ariel in take Township, Wayne County. This resulting subdivision is based upon a settlement agreement dated August 28, 2006. The Lake Township Subdivision and Land Development Ordinance (SALDO) was used as the regulatory basis for our review and the source for the following comments:

13

1) Article II, Section 201.2 (b) of your SALDO requires *"The names of all abutting property owners and the size of any remaining acreages in the tract from which lots are being taken shall be shown."* There are at least a dozen adjoining property owners that need to be revised to list current ownership and/or record book information. Adjoining tax map parcel numbers 12-04-38 has not been acknowledged and 12-04-24 has been deleted and no longer exists according to tax assessment record information. Also, the plan does not address the acreage remaining along the southern strip of this land subdivision. The Township should know what the approximate acreage is for the remainder parcel as referenced on Sheet 1 of 5.

2) Section 201.2 (f) states, *"Proposed lot or parcel lines shall be drawn to scale and dimensions given in feet and hundredths of a foot."* The bearing and distance information for lines L1 through L8, located along Lake Ariel, have not been listed on Sheet 1 of 5. Also, L1 and L2 are listed twice for different locations.

3) Section 201.2 (k) requires *"A Planning Module for Land Development (or such other comparable documentation as may be required by the Pennsylvania Department of Environmental Protection),...."* Our office did not receive any sewage form(s) with this subdivision application. The plan indicates that Form B waiver will be utilized for both Parcel A and the remainder parcel. The Township should verify that the DEP sewage documents have been completed.

4) This subdivision application does not appear to be based on a court decision but rather an agreement between the parties. If this is the case, we do not believe it relieves the parties from meeting the minimum requirements of your subdivision and land development ordinance. Since Parcel "A" contains only 1.93 acres it would appear that a modification application as per Section 106 of your SALDO is required. Parcel "A" could be simply resolved as an addition to other lands of Ariel Land Owners, but *this* does not address the issue of remaining lands. There is no indication of the location or size of the remaining lands. It could be that the remaining parcel will meet your

14

ordinance, or it may not. With the information provided, the Township is not able to make an informed decision on the remaining lands. We suggest that you discuss this proposal with your Solicitor for advice in processing this application.

Our policy is to comment on the items we consider pertinent to this submission. Our comments, along with the comments of other reviewing this plan, are then available to assist you with your decision on this subdivision proposal. Please contact our office if you have any questions.

(Malakin Affidavit Exhibit L).

42. On February 22, 2007, Schoenagel placed Dring and Asaro subdivision application on hold with the following letter to the Lake Township Planning Commission. (Malakin Affidavit Exhibit N).

43. Subsequently, on August 21, 2007, the Settlement Agreement was amended to provide that "the application for subdivision approval referred to in the Settlement Agreement shall be made within 60 days after a final non appealable decision has been entered in the law suit. All deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience time, within thirty days after obtaining subdivision approval". (Malakin Affidavit Exhibit N).

44. The issues are not resolved in the Court's Summary Judgment Memorandum Order of September 30, 2005 or in the Settlement Agreement were decided by the Trial Court in February of 2008.

15

(Malakin Affidavit Exhibit B-1).

45. The judgment of the Trial Court was affirmed by the Court of Appeals in March of 2010. (Malakin Affidavit Exhibit C-1).

**THE CLOSING DOES NOT OCCUR AND DRING AND ASARO INSTITUTE THIS ACTION AGAINST ARIEL LAND OWNERS**

46. Under the terms of the Settlement Agreement, as amended, Dring and Asaro were required to make application for the subdivision approval of the West Shore Strip and the parties were required to exchange the deeds and conveyances, required by the Settlement Agreement at a closing, within 30 days after said approval (Malakin Affidavit Exhibit H and N).

47.  Despite the fact that the decision of the Court of Appeals established the beginning of the time line for performance, the closing contemplated by the Settlement Agreement did not occur. (Malakin Affidavit Exhibit V).

48. On May 11, 2012, Michael Profita, counsel for Dring and Asaro wrote to O'Brien and confirmed the fact that subdivision approval needed to be resolved to consummate the settlement. (Malakin Affidavit Exhibit O).

49. On July 15, 2014, Taroli wrote to O'Brien and advised him that "the western shore strip has been subdivided". This was inaccurate. Dring and Asaro had not obtained approval to subdivide the West Shore Strip. (Malakin Affidavit Exhibit P).

50. On October 18, 2014, Taroli unilaterally scheduled a closing for November 18, 2014 in his offices. (Malakin Affidavit Exhibit R).

51. ALO informed Dring and Asaro's counsel that it would not attend the scheduled closing because, inter alia Dring and Asaro had not obtained subdivision approval for the West Shore Strip and that therefore, a condition of its performance and the time for its performance had not occurred. (Malakin Affidavit Exhibit S).

52. On December 29, 2014, six months after Dring and Asaro had erroneously informed ALO and five weeks after the closing unilaterally scheduled by Dring and Asaro, requested an opinion from the Township that subdivision approval was not necessary. (Malakin Affidavit Exhibit T).

53. The Township, through its Solicitor, David Gromelski responded on January 27, 2015, indicating that subdivision approval was not required. Gromelski indicated that the basis of the Township's conclusion was that the West Shore Strip was a stand alone parcel (Malakin Affidavit Exhibit U).

54. Subsequently, Gromelski determined that the West Shore Strip was not a stand alone parcel but was actually three separate parcels,

created by three separate deeds and that the proposed subdivision of

the West Shore Strip into a northerly and southerly section would

require a division of the southerly most parcel of the Strip ie the

Jeremiah Barnes parcel. The three separate deeds referred to in

Paragraph 57 through 59 of this Statement of Material Facts.

(Malakin Affidavit Exhibit V).

55. On August 4, 2016, Gromelski wrote the following letter to Dring

and Asaro counsel, Anthony Walton:

>   I am writing in my capacity as Solicitor to Lake Township
> regarding issues that have arisen with respect to the above
> referenced property. You may recall that by letter dated December
> 29, 2014 you wrote to me inquiring as to whether this long and
> very narrow strip of land along the westerly shore of Lake Ariel
> (which I refer to as the "snake") needs subdivision approval in light
> of the survey detailing an it as an existing remnant parcel of land
> and not a new subdivision created from other parcel(s). We also
> understood from your letter that your inquiry was being made
> because your client was transferring the entire "snake" to Ariel
> Landowners, Inc. In light of these representations and
> understandings, I responded to your inquiry by letter dated January
> 27, 2015, indicating that the Township reviewed your request and
> concurred that the snake has always been a standalone parcel of land
> and thus and thus no subdivision approval was required.

>   We have subsequently received information indicating that your
> clients intend to convey only a portion of the snake to Ariel
> Landowners, Inc. and retain ownership of a small portion of it. In
> fact, it appears, based on our research, that your clients have
> already filed a Deed essentially re-conveying a small portion of the
> "snake" to themselves.

18

The Municipalities Planning Code ("MPC") defines the term "subdivision", in pertinent part, as "the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose....of transfer of ownership...." In light of the fact that it appears that your client is now dividing the "snake" into two separate parcels of land in order to transfer ownership, as opposed to conveying the entire parcel itself, subdivision approval would indeed be required for such division of land.

On a related note, please be advised that the Township recently discovered in their files a subdivision application that was submitted on your clients' behalf on January 13, 2007 addressing the very issue of dividing the snake into two separate parcels of land. Subsequently, by letter dated February 22, 2007, your clients' representative requested that the application be tabled and waived all time limits for action by the Township under the MPC. Thus, it appears the majority of work necessary to obtain subdivision approval for the partition of the "snake" has already been completed and applying for approval should place no undue additional burdens on your client.

Accordingly, by this correspondence Lake Township is formally requesting that your clients apply for subdivision approval for the division of the "snake" into two separate parcels of land.

I kindly ask that you please contact me at your earliest possible convenience to discuss further and advise as to how your clients intend to proceed. Thank you for your time and attention.

(Malakin Affidavit Exhibit V).

## THE CHAIN OF TITLE TO THE WEST SHORE STRIP

56. On December 13, 1859, George Cadwalder, Esquire, Executor of the Last

Will and Testament of Mary Cadwalder, Deceased, conveyed property

owned by him along the west shore of Lake Ariel to Edward W. Weston by deed recorded in Wayne County Deed Book 28 at Page 36. (Durkovic Affidavit).

57. Edward W. Weston deeded part of his 464 acres to William Jones by deed dated October 3, 1860 and recorded in Wayne County Deed Book 28 at Page 92. This deed did not convey the land lying between the natural western margin of Jones Pond (now Lake Ariel) as the easterly boundary was described as the "high water mark along the water of said pond". (Durkovic Affidavit).

58. Edward W. Weston deeded part of the aforementioned 464 acres to Joel Jones by deed dated January 21, 1862 and recorded in Wayne County Deed Book 30 at Page 39. This deed contains the following language: "Thence along the margin of the highest flow of water in Jones Pond ... leaving the land between said highest flow of water and its natural margin of said pond still belonging to Edward W. Weston," and therefore created a specific exception from the conveyance to Joel Jones, and reservation to Edward W. Weston, of the land lying between the natural margin and the margin of the highest flow of water of Lake Ariel and Mud Pond. (Durkovic Affidavit).

59. Edward W. Weston deeded part of the 464 acres received above to

Jeremiah T. Barnes by deed dated January 21, 1862 and recorded in Wayne County Deed Book 30 at Page 40. This deed described the easterly boundary along Lake Ariel as: "Thence along the margin of the highest flow of water in Jones Pond and Marsh Pond `...`",and therefore did not convey the area between the natural margin of Lake Ariel and Mud Pond and the margin of the highest flow of water in Lake Ariel and Mud Pond. (Durkovic Affidavit).

60. As a result of the aforementioned three deeds of conveyance by Edward W. Weston to William Jones, Joel Jones and Jeremiah T. Barnes, three contiguous strips, a strip between the natural margin of Lake Ariel and Mud Pond, and the high water mark and/or margin of the highest flow of the water known for purposes of this action as the West Shore Strip were reserved unto Edward W. Weston. (Durkovic Affidavit).

61. The West Shore Strip reserved under Edward W. Weston is now owned by Dring and Asaro. (Malakin Affidavit Exhibit D and E).

62. During the prior litigation between Dring and Asaro and ALO, Dring and Asaro offered into evidence the testimony and expert report of William Schoenagel PLS of Greentown, Pennsylvania. Mr. Schoenagel testified that he surveyed the western shore of Lake Ariel and that he had prepared and attached to his report various maps which reflected the results of his

21

work. (Malakin Affidavit Exhibit G).

63. Attached as Exhibit 4 to Schoenagel' s report was a map showing the lands of Nancy Asaro, Lori Dring and others. The Schonegal report was admitted into evidence in the prior litigation as Exhibit Dt 51 D. (Malakin Affidavit Exhibit F).

64. The Schoenagel map referred to in the previous paragraph shows the Jeremiah Barnes portion of the West Shore Strip and the fact that the division of the West Shore Strip into a southern and northerly part of Lot 48 constitutes a division of the Jeremiah Barnes portion into two parts. (Malakin Affidavit Exhibit B-1 page 6; Durkovic Affidavit).

> Respectfully submitted,
>
> **OLIVER, PRICE & RHODES**
>
> /s/ Joseph A. O'Brien
> Joseph A. O'Brien, Esquire
> Attorney I.D. No.: 22103
> Oliver, Price & Rhodes
> P.O. Box 240
> Clarks Summit, PA 18411
> Tel: (570) 585-1200
> Fax: (570) 585-5100
> Email: jaob@oprlaw.com

## CERTIFICATE OF SERVICE

I, **Joseph A. O'Brien**, of Oliver, Price & Rhodes, hereby certify that on the

31st day of October, 2016, I served a true and correct copy of the foregoing

STATEMENT OF MATERIAL FACTS pursuant to the Federal Rules of Civil Procedure,

addressed as follows:

Rosenn, Jenkins and Greenwald, LLP         Michael Profita, Esquire
Garry S. Taroli, Esquire                   500 Frank W. Burr Blvd., Suite 31
Robert N. Gawlas, Jr., Esquire             Teaneck, NJ 07666
15 South Franklin Street
Wilkes Barre, PA   18711-0075

                                           /s/ Joseph O'Brien_____
                                           Joseph A. O'Brien, Esq.

P:\O'BRIEN, JOE\ARIEL LAND OWNERS\Dring & Asaro\Pleadings\Statement of Material Facts.docx