IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI DRING and
NANCY ASARO

              Plaintiffs

v.

ARIEL LAND OWNERS, INC.,
              Defendant

No. 3:15-CV-00478 ARC
(Judge Caputo)

(ELECTRONICALLY FILED)

---

**BRIEF OF DEFENDANT, ARIEL LAND OWNERS, INC.
IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE
PLAINTIFFS, LORI DRING AND NANCY ASARO**

Respectfully submitted,

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

## COUNTER STATEMENT OF FACTS

This action arises out of a longstanding dispute over rights to Lake Ariel and Mud Pond, a body of water in Wayne County PA. The background dispute is familiar to the parties hereto and is set forth in opinions of this Court and of the United States Court of Appeals and need not be repeated herein. Ariel Landowners, Inc. v. Lori Dring and Nancy Asaro, Civil Action No. 3:CV-01-0294 (M.D. Pa August 13, 2008); Ariel Landowners, Inc. v. Lori Dring and Nancy Asaro, Civil Action No. 3:CV-01-0294 (M.D. Pa January 18, 2008); Ariel Landowners, Inc. v. Lori Dring and Nancy Asaro, Nos. 08-3802; 08-3863 (3rd Cir. March 15, 2010) (attached to Malakin Affidavit Document 36, Exhibits b1 and c1)). Suffice to say the dispute led to prior litigation between the parties hereto which resulted in a Settlement Agreement, the alleged breach of which is the subject of this action.

The Settlement Agreement involved ALO, Dring and Asaro, and the West Shore Property Owners. It set forth obligations between ALO and Dring and Asaro and separate obligations between Dring and Asaro and the West Shore Property Owners (ALO S.M.F. 33-35).

As to the obligations owed by ALO to Dring and Asaro, the Agreement generally required (1) ALO to provide Dring and Asaro with four (4) lake rights, and (2) ALO to provide Dring and Asaro with a permanent easement over the

water and a parcel of land at the eastern shore of Lake Ariel at the end of Cardinal Lane. In relevant part, the easement provided by ALO was to allow Dring and Asaro to construct and maintain a dock and, further, to allow for parking of four (4) automobiles on Cardinal Lane.  The size and configuration of the dock was subject to ALO's approval, consistent with customary policies and procedures of ALO (ALO S.M.F. 34).

Dring and Asaro's obligations to ALO were to: (1) subdivide the West Shore Strip into two (2) sections, the North Strip and the South Strip. The West Shore Strip extends along the West Shore of Lake Ariel from the point at which Lake Ariel border on State Route 590 in a southerly direction, in front of approximately 80 private residences owned by the West Shore Group known as the West Shore Property Owners and then in front of the 52 acre parcel of land obtained by Dring and Asaro from Robert Swingle on September 13, 1996. In the Settlement Agreement, the division line between the north part of the West Shore Strip and the south part of the West Shore Strip was the southerly property line of the most southerly cottage which at the time was owned by Gillespie and the aforesaid property of Dring and Asaro (ALO S.M.F. 35).

The time for performance in the Settlement Agreement was set at 30 days after Dring and Asaro obtained the subdivision approval referred to in the previous paragraph (ALO S.M.F. 35).  Subsequently, the Settlement Agreement was

3

amended to provide that the application for approval to subdivide the West Shore Strip into northerly and southerly parts within 60 days after a final non-appealable decision had been entered in the lawsuit and that the performance should occur within 30 days after obtaining the subdivision approval (ALO S.M.F. 37; Malakin Affidavit Exhibit H and M).

Dring and Asaro had applied for subdivision approval on January 10, 2007 before the final decisions of the District Court and the Court of Appeals (ALO S.M.F. 38). Their application was referred to the Wayne County Planning Commission which commented on the application on January 19, 2007 (ALO S.M.F. 41). Dring and Asaro placed the application on hold on February 22, 2007 (ALO S.M.F. 42).

Dring and Asaro's counsel acknowledged their obligation to obtain subdivision approval to separate the West Shore Strip into northern and southern parts by letter dated May 11, 2012 (Malakin Affidavit Exhibit O). Despite this acknowledgment and the provisions of the Settlement Agreement, which required that Dring and Asaro submit a subdivision application after the final decision of the Court of Appeals, Dring and Asaro did not reinstate or resubmit their application at any time after the Court of Appeals affirmed the decision of the District Court in March of 2010 (ALO S.M.F. 46-47 and 55).

As previously indicated, the Settlement Agreement required ALO to grant

4

Dring and Asaro certain rights in a private roadway known as Cardinal Lane.

ALO had obtained a deed for Cardinal Lane from Robert Allen Swingle

individually and as Administrator of the Estate of Gladys Swingle on January 12,

2004 (Malakin Supplemental Affidavit Exhibit A). ALO utilized the services of

Michael Lehutsky, Esq. in obtaining Cardinal Lane. Lehutsky prepared the Deed

which included a special warranty in which the Swingles warranted that they had

not "done committed, or knowingly or willingly suffered to be done, committed

any act, matter or thing whatsoever, whereby the premises hereby granted, or any

part thereof, is, are shall or may be impeached, charged or encumbered, in title,

charge, estate or otherwise howsoever." (Malakin Supplemental Affidavit Exhibit

A). Lehutsky also provided ALO with an abstract of title to Cardinal Lane which

stated in Paragraph 8 thereof that "Title to Cardinal Lane becomes vested in ALO"

(Malakin Supplemental Affidavit Exhibit B).

The Settlement Agreement also obligated ALO to provide an easement for a

dock at Cardinal Lane to Dring and Asaro. The Settlement Agreement provided in

Paragraph 5b thereof that Dring and Asaro's dock design "shall be subject to the

approval of ALO in accordance with customary policies and procedures of ALO

uniformly applied to applications for similar structures." (Malakin Affidavit

Exhibit H). Dring and Asaro submitted a dock design to ALO on August 30, 2013

(Malakin Supplemental Affidavit Exhibit C). ALO determined that the dock

design was not acceptable for its location and so informed Dring and Asaro's counsel on December 8, 2013 (Malakin Supplemental Affidavit Exhibit D).   The problem with the dock design was that it was too large and extended in front of the properties bordering Cardinal Lane (Malakin Supplemental Affidavit Exhibits D and E).

Another problem arose in June 2014.  R. Anthony Waldron, Esq. wrote to ALO's counsel and informed him that Waldron's clients, Salvatore and Elly Culotta, were the owners of Cardinal Lane, having purchased it before ALO from the Swingles in February 2001 (Malakin Supplemental Affidavit Paragraph 7). Efforts were made to settle the Culotta claim. ALO submitted to Culotta a proposed deed for Cardinal Lane together with a deed of easement whereby Culotta would grant ALO sufficient easement rights over Cardinal Lane to meet its obligations under the Settlement Agreement (Malakin Supplemental Affidavit Exhibits G and H). These efforts were unsuccessful and Culotta instituted a quiet title action against ALO in the Court of Common Pleas of Wayne County in March of 2016. ALO is contesting the suit which is still pending in the Court of Common Pleas (Malakin Supplemental Affidavit Paragraph 8).

ALO also made efforts to settle the Cardinal Lane issue with Dring and Asaro (Malakin Supplemental Affidavit Paragraph 9).  ALO submitted an alternative proposal for the dock to Dring and Asaro through their counsel on

6

August, 15, 2014 (Malakin Supplemental Affidavit Paragraph 9 and Exhibit H).

On October 14, 2014, Dring and Asaro informed ALO that its alternative proposal

for the dock was unacceptable (Malakin Supplemental Affidavit Paragraph 10 and

Malakin Affidavit, Document 36, Exhibit R).

At this point, there were clearly unresolved issues between the parties that

Dring and Asaro had not performed their obligations under the Settlement

Agreement to design a dock consistent with ALO's requirements and to obtain

subdivision approval to divide the West Shore Strip into a northerly and southerly

plot. Dring and Asaro's position was that ALO could not meet its obligations under

the Settlement Agreement because, in light of the Culotta challenge, it could not

provide the rights required under the Settlement Agreement.

Despite the impasse referred to the in previous paragraph, counsel for Dring

and Asaro wrote to counsel for ALO on July 15, 2014 and erroneously stated that

"the western shore strip has been subdivided" (ALO S.M.F. 49).  Subsequently, on

October 18, 2014, Dring and  Asaro's counsel unilaterally scheduled a closing for

the parties to perform the Settlement Agreement for November 18, 2014 (ALO

S.M.F. 50).  Dring and Asaro's counsel also demanded that ALO provide

"adequate assurances" that it had good and marketable title to the dock area and

the ability to convey the easement to Dring and Asaro, *Id*.

ALO did not provide the adequate assurances requested by Dring and Asaro.

7

Dring and Asaro, however, decided not to declare an anticipatory breach or

repudiation of the contract by ALO. Rather, as indicated above in a letter dated

October 18, 2014, Dring and Asaro unilaterally scheduled a closing to take place

in their counsel's office on November 18, 2014. The purpose of the closing was

"for the exchange of deeds and other interests required to be mutually exchanged

by the parties, pursuant to Section 15 of the Settlement Agreement. The letter also

made time of the essence" for the performance of the obligations of the Settlement

Agreement. Dring and Asaro acknowledged its election to proceed to closing at

which documents would be mutually exchanged rather than to declare an

anticipatory breach in its Amended Complaint, Document 4, Paragraphs 23-26, in

its Motion for Partial Summary Judgment, Document 37 Paragraph 21, in its

Statement of Undisputed Material Facts, Document 38, page 7, and in its Brief in

Support of its Motion for Partial Summary Judgment, Document 39 Page 9.

In an e-mail to Dring and Asaro's counsel dated November 17, 2014, ALO

stated two reasons why it would not attend the closing unilaterally scheduled by

Dring and Asaro. First, Dring and Asaro had not obtained subdivision approval for

the West Strip and therefore, a condition of performance of the Settlement

Agreement and the time performance of the Settlement Agreement had not

occurred. Second, Dring and Asaro had not submitted an appropriate design of

their dock to ALO as required by the Settlement Agreement. (Malakin Affidavit,

Exhibit S).

The closing did not occur and on March 15, 2015, Dring and Asaro instituted this action in the United States District Court. Consistent with its action in scheduling a closing, Dring and Asaro did not make a claim for repudiation in their Complaint or Amended Complaint. Rather, Dring and Asaro claimed that ALO breached the contract by not appearing at the closing on November 18, 2014 and mutually exchanging documents (Complaint Document #1, Amended Complaint Document #4).

Discovery in the case has been completed. ALO filed a Motion for Summary Judgment seeking summary judgment on the grounds that it had not breached the agreement on November 18, 2014 because a condition of performance, i.e. subdivision approval of the West Shore Strip and the time for performance, i.e. 60 days after subdivision approval had not occurred.

Dring and Asaro's Brief in Opposition to ALO's Motion is due on December 15, 2016. Dring and Asaro filed a Motion for Partial Summary Judgment claiming there is no material issue of fact as to whether ALO breached the Settlement Agreement and that therefore, they should be awarded partial summary judgment.

ALO submits this Brief in Opposition to the Dring and Asaro Motion for Partial Summary Judgment.

<u>**COUNTER STATEMENT OF QUESTIONS INVOLVED**</u>

1.     Does the record in this case entitle Dring and Asaro to partial summary judgment on the claim that ALO breached the settlement agreement by failing to attend the closing scheduled by Dring and Asaro on November 18, 2014?

Suggested Answer: No

<u>**ARGUMENT**</u>

**DRING AND ASARO'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DRING AND ASARO BREACHED THE TERMS OF THE SETTLEMENT AGREEMENT BY FAILING TO OBTAIN SUBDIVISION APPROVAL FOR THE WEST SHORE STRIP**

Under Pennsylvania law, a party asserting a breach of contract must establish (1) the existence of a contract (2) a breach of duty imposed by the contract and (3) damages. *More v. Angies List,* 118, F. Supp 3d. 802, 818 (E.D. Pa 2015); J. F. Walker Company, Inc. v. Excalibur Oil Group, Inc. 792 A2d. 1269, 1272 (Pa Super. 2002); 12 P.L.E. Contracts §462 P. 472.  This case comes before the Court on a Motion for Partial Summary Judgment filed by Dring and Asaro.  Thus Dring and Asaro's burden is to establish that there are no genuine issues as to any material fact that ALO breached the Settlement Agreement by failing to appear at the December 18, 2014 closing and that therefore, as a matter of law, Dring and Asaro are entitled to summary judgment. Fed. R. Civ. P. 56(a).

10

In this matter, the Settlement Agreement as amended, requires ALO to perform "within thirty days" after Dring and Asaro obtained subdivision approval. Dring and Asaro never obtained such approval and therefore, the time for ALO to perform did not occur. Thus, ALO could not have breached the agreement by failing to perform at the closing on November 18, 2014.

Pennsylvania law also requires a party who seeks to recover damages for a breach of contract to prove that he has performed all of his own obligations under the contract. *Trumbill Corporation v. Boss Contraction, Inc.,* 801 A.2d 1289, 1292 (Pa. Cmwlth 2002).  A party to a contract who has materially breached it cannot complain if the other party refuses to perform its obligation under the contract. *Nicole, Inc. v. Klinger*, 603 A2d. 289, 302 (Pa Super 1992).  Dring and Asaro did not perform its obligation contained in the Settlement Agreement to obtain subdivision approval for the West Shore Strip. Therefore, Dring and Asaro cannot recover from ALO for its failure to perform its obligations under the Settlement Agreement.

A condition is an event not certain to occur which must occur before performance under a contract is due. Restatement of the Law of Contracts (Second) §224.  Performance of a duty subject to a condition cannot become due unless the condition occurs. Id. at 225 (1); *Riley v. General Mills, Inc*. 346 F.2d. 68, 70-71 (3d Cir. 1965); 12 P.L.E. Contracts Section 446 page 436.  Subdivision approval was

11

clearly a condition of ALO's obligation to perform because ALO's performance was not due until it occurred.  The condition did not occur.  Therefore, ALO's performance is excused.

The record in this case is clear that Dring and Asaro were obligated under the Settlement Agreement to obtain subdivision approval to divide the West Shore Strip and that they did not do so.  The record is also clear that ALO's obligation to perform the terms of the Settlement Agreement did not arise and was contingent on Dring and Asaro obtaining such approval.  ALO believes and is contending in its Motion that it is entitled to summary judgement due to Dring and Asaro's failure to obtain the required approvals.  Whatever the outcome of that Motion, it is clear that, at a very minimum there are material facts and legal principles related to the subdivision approval requirement that justify ALO's refusal to attend the closing on November 18, 2014 and therefore preclude the granting of Dring and Asaro's Motion.

### DRING AND ASARO'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DRING AND ASARO BREACHED THE TERMS OF THE SETTLEMENT AGREEMENT BY FAILING TO PROVIDE A DOCK DESIGN IN ACCORDANCE WITH CUSTOMARY POLICIES AND PROCEDURES OF ALO

Another reason exists in the record which requires the denial of Dring and Asaro's Motion. The Settlement Agreement requires in paragraph 5b that the size and configuration of Dring and Asaro's Cardinal Lane dock "shall be subject to the

approval of ALO, in accordance with customary policies and procedures of ALO uniformly applied to applications for similar structures." Dring and Asaro submitted a dock design which reflected a dock which extended to points which were directly in front of the two property owners on either side of Cardinal Lane (Malakin Supplemental Affidavit Paragraphs 4 and 5 and Exhibit D). ALO denied this application on the grounds that it does not approve docks which extend in front of neighboring properties (Malakin Supplemental Affidavit Paragraph 5 and Exhibit D). Dring and Asaro then decided to take no further action with respect to dock design and so informed ALO stating that it would be "pointless to continue that exercise" (Malakin Affidavit, Document 36, Exhibit B).

Dring and Asaro allege in their Motion that ALO breached the Settlement Agreement by failing to provide them with an easement that would allow them, *inter alia*, to construct a dock at Cardinal Lane. The Settlement Agreement however, requires Dring and Asaro to provide a dock design consistent with ALO's policies and procedures. In a letter dated July 15, 2014, Dring and Asaro's counsel acknowledged the need to define the area of dock construction but refused to provide a new design (Malakin Affidavit Document 36 Exhibit P). ALO submits that there is a material question of fact as to whether Dring and Asaro's breached the settlement agreement by failing to provide an easement for a dock that Dring

13

and Asaro were required by the same Settlement Agreement to design but refused to do so.

**DRING AND ASARO'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED: 1) BECAUSE THEIR CLAIM FOR REPUDIATION WAS NOT ALLEGED IN THE COMPLAINT; 2) BECAUSE THERE EXISTS QUESTIONS OF MATERIAL FACT AS TO WHETHER ALO REPUDIATED THE AGREEMENT; 3) BECAUSE THERE EXISTS MATERIAL QUESTIONS OF FACT AS TO WHETHER DRING AND ASARO ELECTED TO REPUDIATE THE AGREEMENT; AND 4) BECAUSE THERE EXISTS QUESTIONS OF MATERIAL FACT AS TO WHETHER DRING AND ASARO WERE READY, WILLING AND ABLE TO OBTAIN SUBDIVISION APPROVAL OR PROVIDE AN ALTERNATIVE DESIGN FOR THE DOCK.**

### 1.

As indicated in pages 6 through 8 in this brief, Dring and Asaro did not make a claim for anticipatory breach or repudiation in their Amended Complaint. Any reasonable interpretation of the Amended Complaint would result in the conclusion that Dring and Asaro, who chose not to declare a repudiation of ALO's alleged breach, then chose to pursue in their Amended Complaint a basic breach of contract claim that ALO breached the contract by failing to appear at the November 18 closing. Indeed, not only does the Complaint fail to allege a repudiation claim there is not even any mention of such a claim until the filing of Dring and Asaro's Brief in Support of their Motion for Partial Summary Judgment. ALO submits therefore, that Dring and Asaro are not entitled to partial summary judgment on the repudiation claim because it is not alleged in their pleadings.

**2.**

Under Pennsylvania law, to constitute a repudiation there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so. *Edwards v. Wyatt*, 335 Fed 3d. 261, 272 (3rd Cir. 2003); *Oakridge Construction Company v. Roy Tolly*, 504 A 2d. 1443, 1346-7 (Pa. Super 1985). The fact that a party seeks to preserve a legal defense to acquire performance does not reflect an intention to deliberately breach the agreement. *Boro Construction, Inc. v. Ridley School District*, 992 A2d 208, 219 (Pa. Cmwlth 2009).

In the case at bar, ALO refused to attend the closing based on two legal defenses of justifications. First, Dring and Asaro had not obtained the subdivision approval, required by the Settlement Agreement, which was both a condition of its performance and established the time for performance. Second, Dring and Asaro had not provided an adequate dock design as required by the Settlement Agreement (Malakin Affidavit, Exhibit 6). In addition, ALO's intent to affirm rather than disavow the Settlement Agreement are reflected in its attempt to settle the Culotta dispute by transferring Cardinal Lane to Culotta in return for an easement that would enable it to perform the Settlement Agreement (Malakin Supplemental Affidavit, paragraph 7 and Exhibits F and G) and in its efforts to keep the agreement alive by providing Dring and Asaro with an alternative easement area

15

(Malakin Supplemental Affidavit, paragraph 9 and 10 and Exhibit H). Moreover, despite Dring and Asaro's allegation that it engaged in bad faith, there is clearly evidence in the record that indicates that ALO believed it owned Cardinal Lane. As indicated in pages 4 and 5 of this Brief, ALO retained counsel in its acquisition of Cardinal Lane. Counsel prepared a Special Warranty Deed in which the Seller, Robert Swingle warranted ownership of the property. Counsel provided ALO with an Abstract of Title, indicating that title to Cardinal Lane was vested in ALO. This evidence is clearly inconsistent with any intent on ALO's part to repudiate the Settlement Agreement. ALO submits therefore that, under these circumstances, there are material questions of fact as to whether its refusal to attend the closing, which was prematurely scheduled, constituted an absolute and unequivocal repudiation of the contract.

### 3.

Under Pennsylvania law, when faced with a repudiation, the non-breaching party may opt to place the repudiating party in immediate breach or may opt to afford the repudiator the opportunity to perform. *Total Control, Inc. v. Danaher Corporation*, 359 F.Supp 2d 387, 393-94 (E.D. 2005); *Simon Wrecking Company, Inc. v. AIU Insurance Company*, 350 F.Supp 2d 624, 634-35 (E.D.Pa 2004). (The renunciation of a contractual duty before the time fixed in the contract for performance is an anticipatory repudiation which ripens into a breach prior to the

16

time for performance only if the injured party elects to treat it as such.) *McCormick v. Casualty Company of New York*, 161 A. 532 (Pa 1932)(holding that if there is a repudiation breach, the injured party may accept such a breach and sue at once or the injured party can reject the repudiation and treat the contract as remaining in force); *see also Franconia Associates v. United States*, 122 S.C.t. 1993, 2002 (2002). In re: *Red Rock Services Company, LLC,* 522 B.R. 551, 565 (E.D Pa. 2014)(Maryland Law); In re: *Broadstripe, LLC v. Millennium Digital Media Systems, LLC,* 435, B.R. 245, 257-258, (D. Delaware 2010)(Delaware Law); Farnsworth on Contracts (3rd Addition), Section 8.22, pages 565-571.

As indicated on pages 6 and 7 of this brief, Dring and Asaro did not declare an anticipatory repudiation on October 18. Rather, they chose to schedule a "time of essence closing" for a mutual exchange of documents by the parties. In addition, as indicated on page 7 of this brief, Dring and Asaro's decision not to declare a repudiation and to proceed to a closing, is reflected in the Amended Complaint, Motion for Partial Summary Judgment, Statement of Undisputed Facts and Brief in Support of Partial Summary Judgment Motion, which they have filed in this case. Thus, ALO submits that Dring and Asaro are not entitled to Summary Judgment on the anticipatory repudiation claim because there exists question of fact whether they elected to pursue such a claim.

**4.**

In addition, Dring and Asaro are not be entitled to partial summary judgement because a plaintiff cannot recover for repudiation unless he pleads and proves that he would have been ready, willing and able to perform the contract had the repudiation not occurred. Corbin on Contracts, (Interim Edition) Volume 10 # 978. In this case, Dring and Asaro have failed to not only to allege a claim for anticipatory breach but have also failed to allege that they were ready, willing and able to perform their obligations absent such breach. The record in this case reflects that Dring and Asaro applied for subdivision approval on January 10, 2007 but placed the application on hold less than one month later on February 22, 2007 (ALO SMF 38-42; Malakin Affidavit Document 36 Exhibits J, K, L and N). In addition, though their counsel acknowledged the obligation to obtain settlement approval in a letter to ALO's counsel on May 11, 2012 (Malakin Affidavit, Document 36 paragraph 18 in Exhibit O), Dring and Asaro chose not to revive or refile the application for subdivision approval. Rather, the record reflects that Dring and Asaro provided ALO with inaccurate information when their counsel informed ALO counsel on July 15, 2014 that the West Shore Strip had been subdivided (ALO SMF 49; Malakin Affidavit Document 36, Exhibit B). In addition, approximately 6 weeks after the closing that they had unilaterally scheduled, Dring and Asaro sought and obtained an opinion from Lake Township that subdivision approval was not required and did so based on additional

18

inaccurate information, to wit, that the West Shore Strip was a stand alone parcel and that the division of the strip on the southerly line of the Gillespie property did not require subdivision approval from the Township (ALO SMF 52-55; Malakin Affidavit Document 36, Exhibits T, U and V). This opinion was later revoked by the Township when it learned that it was based on inaccurate information submitted by Dring and Asaro (ALO SMF paragraph 55 and Malakin Affidavit, Document 36 Exhibit V). ALO submits that Dring and Asaro's aforesaid conduct creates material questions of fact as to whether they intended to or were willing to obtain the subdivision approval required by the Settlement Agreement.

Furthermore, the record also contains material questions of fact as to whether Dring and Asaro were willing to or intended to provide the dock design required by the Settlement Agreement. Indeed, when faced with ALO's legitimate rejection of Dring and Asaro's design, Dring and Asaro decided not to provide an alternative design, declaring the exercise "pointless" (Malakin Affidavit, Document 36, Exhibit P).

## CONCLUSION

On the basis of the foregoing, ALO submits that there are material questions of fact and legal principles, which require the Court to deny Dring and Asaro's Motion for Partial Summary Judgment.

19

Respectfully submitted,


/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

## CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify that on this date, I caused the foregoing BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT via the Court's ECF system on all counsel of record as authorized under Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for the Middle District of Pennsylvania. I further certify that all counsel of record in the case, but for the Plaintiff, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Rosenn, Jenkins and Greenwald, LLP
Garry S. Taroli, Esquire
Robert N. Gawlas, Jr., Esquire
15 South Franklin Street
Wilkes Barre, PA   18711-0075

Michael Profita, Esquire
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666

/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire

P:\O'BRIEN, JOE\ARIEL LAND OWNERS\D&A vs. ALO-478-Current\Pleadings\Brief in Opp to Motion for Sum Judg.docx