**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LORI DRING and NANCY ASARO,

    Plaintiffs,

        v.

ARIEL LAND OWNERS, INC.,

    Defendant.

CIVIL ACTION NO. 3:15-CV-00478

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before this Court are cross-motions for summary judgment (*Docs.* 32, 37) filed by Plaintiffs Lori Dring and Nancy Asaro (collectively "Plaintiffs") and Defendant Ariel Land Owners ("ALO"). Plaintiffs' Motion for Summary Judgment will be granted in part and denied in part; judgment will be entered in favor of Plaintiffs' on ALO's counterclaim. In so far that ALO's Motion for Summary Judgment does not seek judgment on its counterclaim, its Motion will be granted.

### **I. Background**

**A.**     **Prior Litigation and the Settlement Agreement**

This action arises out of a longstanding dispute between Plaintiffs Dring and Asaro, Defendant ALO, and a group of individuals known as the West Shore Property Owners. The dispute involves Lake Ariel and Mud Pond, a body of water in Wayne County, Pennsylvania. ALO is a business corporation which owns a body of water in Wayne County known as Lake Ariel and Mud Pond. Dring and Asaro are the owners of approximately 89 acres of land on the western shore of Lake Ariel and Mud Pond. The West Shore Property Owners are a group of individuals who own homes along the West Shore, north of the property owned by Dring and Asaro.

There was prior litigation between the parties in this Court. In its September 30, 2005 Order in that case, this Court concluded that Dring and Asaro's ownership of property on

or under Lake Ariel did not give them the right to use the Lake. Trial subsequently began on August 14, 2006. Prior to the day of trial on August 28th, the parties informed the Court that a partial settlement had been reached and presented the Court with a written Settlement Agreement. The Settlement Agreement set forth obligations between ALO and Dring and Asaro and separate obligations between Dring and Asaro and the West Shore Property Owners.

As to the obligations owed by ALO to Dring and Asaro, the Agreement generally required ALO to provide Dring and Asaro with: (1) four lake rights; and (2) a permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel at the end of Cardinal Lane (the "Dock Area"). (*Plaintiffs' Statement of Material Facts* ("*PSMF*"), *Doc.* 38, Ex. 1 at ¶ 5(a).) Specifically, Section 5(b) of the Settlement Agreement reads: "ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which transfer to Dring/Asaro . . . [a] permanent easement over the [Dock Area]." (*PSMF*, Ex. 1 at ¶ 5(b).) The easement provided by ALO was to allow Dring and Asaro to construct and maintain a dock and, further, to allow for parking of four automobiles on Cardinal Lane. (*Id.*) The size and configuration of the dock was subject to ALO's approval, consistent with customary policies and procedures of ALO. (*Id.*)

Dring and Asaro's obligations to ALO were to subdivide the West Shore Strip into two sections, the North Strip and the South Strip. (*PSMF*, Ex. 1 at ¶ 2.) Dring and Asaro were to deliver ALO a quitclaim deed to the North Strip subject to a permanent easement in favor of the West Shore Property Owners. (*PSMF*, Ex. 1 at ¶ 3.) The time for performance in the Settlement Agreement was set at thirty (30) days after Dring and Asaro obtained subdivision approval for the West Shore Strip.[1] The Settlement Agreement was subsequently amended

---

[1] Stated differently, the subdivision of the West Shore Strip was a condition precedent of the Settlement Agreement.

to provide that Dring and Asaro's application for subdivision approval "shall be made within sixty (60) days after a final, non-appealable decision was entered in the [original] lawsuit." (*PSMF*, Ex. 2.) The amendment further provided that "all deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenient time within thirty (30) days after obtaining the subdivision approval." (*Id.*)

The judgment of this Court was affirmed by the Court of Appeals in March of 2010. Dring and Asaro had applied for subdivision approval on January 10, 2007 before the final decision of the Court of Appeals. (*Defendant's Statement of Material Facts* ("*DSMF*"), *Doc*. 36, at ¶ 38.)Their application was referred to the Wayne County Planning Commission, which commented on the application on January 19, 2007. (*DSMF*, at ¶ 41.) Dring and Asaro placed the application on hold on February 22, 2007. (*DSMF*, at ¶ 42.) Dring and Asaro did not reinstate or resubmit their application at any time after the Court of Appeals affirmed the decision in March 2010.

**B. The Dispute**

On August 30, 2013, Dring and Asaro submitted a dock design to ALO. On November 8, 2013, Joseph O'Brien, counsel for ALO, sent a letter to Gary Taroli, counsel for Dring and Asaro, which informed Taroli that the ALO Board of Directors believed Dring and Asaro's proposed dock design was too large. (*PSMF*, Ex. 6.) The letter further stated that neighboring property owners had informed ALO that ALO "do[es] not have a right to give [Dring and Asaro] an easement over Cardinal Lane. It seems we have a problem." (*Id.*)

On July 15, 2014, Taroli wrote back to O'Brien and stated that "the western shore strip has been subdivided, and Dring/Asaro are ready, willing, and able to deliver the quit claim deed (subject to a permanent easement in favor of the [West Shore] Property Owners)." (*DSMF*, Ex. P.) The letter further noted that, in light of O'Brien's November 8, 2013 letter, which indicated ALO might not have the ability to grant the easement over the

3

Dock Area, Dring and Asaro demanded adequate assurances that ALO indeed had good and marketable title to the land in question and the ability to convey the easement as required by Section 5 of the Settlement Agreement. (*Id.*)

On August 15, 2014, ALO proffered an alternative location for the dock. (*Affidavit of Theodore Malakin*, *Doc*. 50, Ex. H.) On October 14, 2014, Taroli wrote a letter to Theodore Malakin, President of ALO, in which he rejected as unsatisfactory ALO's proposed alternative site for the dock area. (*DSMF*, Ex. R.) The letter further stated that Dring and Asaro continued to be ready and willing to perform their obligations under the Settlement Agreement. (*Id.*) The letter scheduled the closing to take place on November 18, 2014 at 9:00AM, and advised that "time was of the essence." (*Id.*) Further, the letter informed ALO that "[i]n the event you are not ready, willing and able to perform your obligations under the Settlement Agreement, [Dring and Asaro] will declare you in breach." (*Id.*)

On November 17, 2014, ALO informed Dring and Asaro that it would not be attending the closing for two reasons: (1) Dring and Asaro had not designed a dock system in accordance with ALO's regulations, as required under the Agreement; and (2) ALO failed to obtain subdivision approval for the West Shore Strip, as required by law and under the Settlement Agreement. (*DSMF*, Ex. S.)

In response to ALO's concerns, Dring and Asaro requested an opinion from the Lake Township that subdivision approval was not necessary. (*DSMF*, Ex. T.) The Township, through its Solicitor, David Gromelski, responded on January 27, 2015 and stated that subdivision approval was not required. (*DSMF*, Ex. U.) However, on August 4, 2016, Gromelski determined that the proposed subdivision of the West Shore Strip into a northerly and southerly section would require subdivision approval. (*DSMF*, Ex. V.) Gromelski indicated that this change in opinion stemmed from the fact that Dring and Asaro were seeking to divide the West Shore Strip into two separate parcels in order to transfer

4

ownership of one of the parcels, as opposed to conveying the entire parcel itself. (*Id.*) Gromelski formally requested that Dring and Asaro apply for subdivision approval for the division of the West Shore Strip. (*Id.*)

**C.     The Chain of Title to Cardinal Lane and Subsequent Litigation**

ALO claims it obtained title to Cardinal Lane by virtue of a deed from the Estate of Gladys Swingle (the "Swingles") dated January 12, 2004. (*PSMF*, at ¶ 6.) However, the Swingles conveyed multiple properties around Lake Ariel to Salvatore and Elly Culotta by deed executed and delivered on February 11, 2002.[2] (*PSMF*, at ¶ 7.) The Culottas' deed includes a 47-acre parcel of land along the shore line of Lake Ariel, which includes the property known as Cardinal Lane that was purportedly deeded to ALO by the Swingles in 2004. (*PSMF*, at ¶ 9.)

According to the affidavit of R. Anthony Waldron, counsel for the Culottas, in the Summer of 2015 O'Brien acknowledged that ALO did not have good title to Cardinal Lane. (*PSMF*, Ex. 4 at ¶ 5.) O'Brien presented the Culottas with a proposed confirmatory deed on behalf of ALO in the Fall of 2015, which would have conveyed any interest in Cardinal Lane held by ALO to the Culottas, subject to an easement that purportedly would have granted ALO sufficient rights over Cardinal Lane to meet its obligations under the Settlement Agreement. However, ALO failed to execute and deliver this confirmatory deed and, in March 2016, the Culottas filed a quiet title action against ALO in the Wayne County Court of Common Pleas, requesting a declaration that the Culottas are the owners of Cardinal Lane.[3]

---

[2]     Due to a clerical error, the deed was mis-dated February 11, 2001. (*PSMF*, at ¶ 8.)

[3]     Taking a contrary position, on July 31, 2015, ALO filed a legal malpractice action against Michael Lehutsky, the attorney who represented ALO on its land purchase with the Swingles. The lawsuit alleges that Lehutsky failed

5

On June 1, 2018, Senior Judge Kenneth Seamans of the Wayne County Court of Common Pleas decided that the Culottas, not ALO, possessed "superior title to Cardinal Lane by a fair preponderance of the evidence." (*Doc*. 82, Ex. 1.) Further, Judge Seamans ordered the deed from the Swingles to ALO "invalid and void." (*Id.*)

### D. The Chain of Title to the West Shore Strip

In the prior litigation before this Court, I made the following relevant factual findings as to the creation of the West Shore Strip:

(1) The West Shore Strip was passed under residuary estate of Charles Weston to Wells College and Rensselaer Polytechnic Institute ("RPI"). Specifically, Wells College obtained one-third of the West Shore Strip, and RPI obtained the remaining two-thirds.

(2) RPI conveyed its two-thirds interest in the West Shore Strip to Dring and Asaro by quitclaim deed dated November 2, 2001.

(3) Wells College conveyed its one-third interest in the West Shore Strip to Dring and Asaro by quitclaim deed dated December 6, 2001.

(4) Neither Wells College nor RPI had conveyed any interest in the West Shore Strip prior to conveying their interests to Dring and Asaro. Therefore, the ownership of the West Shore Strip south of the portion which was conveyed in the Settlement Agreement is vested in Dring and Asaro.

In May 2001, prior to obtaining title to the West Shore Strip from the Colleges, Dring

---

to properly search the title for Cardinal Lane and, consequently, ALO did not acquire valid title to Cardinal Lane. It appears this litigation is ongoing. Additionally, ALO filed suit against the Swingles in the Court of Common Pleas alleging the Swingles knew that they did not own Cardinal Lane when they delivered the deed to ALO on January 12, 2004.

6

and Asaro made an application with the Lake Township to combine the property on the western shore of Lake Ariel they obtained in 1998, with another 33-acre parcel of land bordering on the north side of their property.[4] The application was approved in June 2001. Dring and Asaro obtained the West Shore Strip from the Colleges by deed in November and December 2001.

**E.     Instant Litigation and Motions for Summary Judgment**

On March 10, 2015[5], based on the facts discussed above, Dring and Asaro filed a single-count Complaint alleging that ALO breached the Settlement Agreement. (*Doc*. 1.) Dring and Asaro filed an Answer to the Amended Complaint on May 14, 2015, which included a number of affirmative defenses and a counterclaim. (*Doc*. 6.) In its counterclaim, ALO alleges that Dring and Asaro breached the Settlement agreement when they failed to properly subdivide the West Shore Strip and seek approval for a planned dock at Cardinal Lane. (*Id.*) The parties then filed cross motions for summary judgment. Specifically, Dring and Asaro and ALO seek to have this Court find that the other was in breach of the Settlement Agreement. These motion have been fully briefed and are ripe for review.

## II. Legal Standard

**A. Motion for Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no

---

[4]     On September 13, 1996, Dring and Asaro obtained a 52-acre parcel of land on the west shore of Lake Ariel from Robert and Irene Swingle, Glenna Curtis, and Marian Swingle ("Swingle and Curtis"). The 1996 deed contained a metes and bounds description which reflected a boundary line along the high water mark on Lake Ariel and Mud Pond. On April 28, 1998, Dring and Asaro received and filed a corrective deed for the 52-acre parcel. The corrective deed purported to add to Dring and Asaro's property the land between the natural margin of Lake Ariel and the high water mark of Lake Ariel and Mud Pond.

[5]     An Amended Complaint was filed on April 16, 2015 to cure a jurisdictional defect.

7

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's

favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

**A.     Plaintiffs' Motion for Partial Summary Judgment: Breach of Contract**

First, Plaintiffs argue that their Motion for Partial Summary Judgment should be granted because ALO breached the Settlement Agreement. Specifically, Plaintiffs premise this breach on the fact that ALO never possessed marketable title to Cardinal Lane. ALO disagrees and explains that it was not necessary for it to possess marketable title for Cardinal Lane until the Agreement's condition precedent–namely the subdivision of the West Shore Strip–was satisfied. If true, it follows that ALO was not in breach because it

9

owed no duty to Dring and Asaro until after the condition was satisfied. I will find that the Settlement Agreement contains a condition precedent and that Plaintiffs failed to satisfy it. Therefore, ALO owed no duty to the Plaintiffs and Plaintiffs' Motion will be denied in part. Second, Plaintiffs argue that judgment should be entered in their favor with respect to ALO's counterclaim. I agree. The law does not require the performance of a futile act, and Plaintiffs' satisfaction of the condition precedent would have been futile. So, Plaintiffs' Motion will be granted in part.

    (1)    Breach of Contract

To establish a claim for breach of contract, "a plaintiff must show that (1) a contract existed between the parties, (2) the defendant breached a duty imposed by that contract, and (3) the plaintiff suffered damages as a result." *Am. Atelier, Inc. v. Materials, Inc.*, 675 Fed. App'x. 149, 153 (3d Cir. 2017) (citing *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010)). Here, a contract existed between the parties. *See In re Columbia Gas Sys., Inc.*, 50 F.3d 233, 238 (3d Cir. 1995) ("In a non-bankruptcy context, we have treated a settlement agreement as a contract."). But the parties dispute whether ALO owed a duty to the Plaintiffs under the agreement and whether the Plaintiffs sustained cognizable damage.

    (2)    Condition Precedent

ALO principally argues that it did not breach the Settlement Agreement on November 18, 2014–the day of the scheduled closing–because it owed no duty to the Plaintiffs prior to the satisfaction of a condition precedent. It is ALO's position that both the subdivision of the West Shore Strip and the approval of plans for a dock at Cardinal Lane were conditions of its performance under the Agreement. And, I agree.

A condition precedent is defined as an "act or event which must occur before a duty of performance under an existing contract becomes absolute." *Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988) (citation and internal quotation marks omitted). If a contract contains

a condition precedent, then the condition precedent must occur before a duty to perform under the contract arises. *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 437 Pa. Super. 41, 46 (1994). Although the parties to a contract–or in this case a settlement agreement– are not required to use any particular words to create a condition precedent, an act or event designated in a contract will not be construed as a condition precedent unless it clearly appears to have been the parties' intention or is clearly expressed in the language of the contract. *Id.* at 47; *see also Castle*, 840 F.2d at 177 (explaining that under Pennsylvania law, a condition precedent must be expressed in clear language or it will be construed as a promise) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1016 (3d Cir. 1980)); *Shook of W. Va., Inc. v. York City Sewer Auth.*, 756 F. Supp. 848, 851, 854 (M.D. Pa. 1991) ("[L]anguage in a contract not clearly identified as a condition precedent is presumed not to be one . . . . an act or event in a contract must not be construed as a condition precedent unless it is expressly made so or unless it clearly appears to have been the intention of the parties.") (citing *Mellon Bank N.A.*, 619 F.2d at 1016).

Here, there is clear language indicating that there is a condition precedent that must be satisfied prior to ALO executing and delivering the instruments of conveyance outlined in Section 5 of the Settlement Agreement. Section 15 of the Settlement Agreement states that:

> All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.

In other words, before subdivision approval, ALO had *no duty to perform* under the Agreement. Further, Section 2 of the Settlement Agreement places the duty to obtain approval for the subdivision squarely on the shoulders of Dring and Asaro. Section 2 of the Settlement Agreement explains that:

> Dring/Asaro agree to subdivide the strip of land along the western shore of Lake Ariel which was acquired by deed from Wells College dated December 6, 2001 and from Rensselaer Polytechnic Institute dated November 2, 2001

11

> (the "Western Strip") along the southernly property line of Lot 48 . . . . That portion of the Western Shore Strip north of the subdivision line is hereafter called the North Strip, and that portion of the Western Shore Strip south of the subdivision is called the South Strip.

Therefore, ALO is correct when it notes that prior to the conveyance of the instruments related to Cardinal Lane, Dring and Asaro were required to satisfy a condition precedent; they had to provide subdivision approval for the Western Shore Strip.

Dring and Asaro did not properly obtain subdivision approval as required by the Settlement Agreement. The record is clear, on January 10, 2007, following the execution of the Settlement Agreement, Dring and Asaro applied for subdivision approval for the West Shore Strip. Their application was referred to the Wayne County Planning Commission, which reviewed and commented on the application on January 19, 2007. Subsequently, on February 22, 2007, Dring and Asaro placed their application on hold. This application was never reinstated. Further, Lake Township, in a letter dated August 4, 2016, explained to Dring and Asaro that "in light of the fact that it appears that [they are] now dividing the [West Shore Strip] into two separate parcels of land in order to transfer ownership, as opposed to conveying the entire parcel itself, subdivision approval would indeed be required for such division of land.[6]"

Dring and Asaro contend that the property was already subdivided, and thus their 2007 filing was superfluous. To support this position, Plaintiffs point to an application they filed in May of 2001 ("the 2001 Plan"). With this application, Plaintiffs claim they subdivided

---

[6] Notably, the Lake Township Solicitor also wrote to Dring and Asaro on January 25, 2015. There, he explained that subdivision of the West Shore Strip was not required. But he revised this opinion in his August 4th letter. The reason for the confusion: the Township originally believed that "[Dring and Asaro] was transferring the entire [West Shore Strip.]" Of course, this was not the case, and upon learning that Dring and Asaro sought only to convey a portion of the West Shore Strip, Lake Township amended its position.

the West Shore Strip. However, the record does not support this conclusion. First, the 2001 Plan does not picture the entire North Strip. (*See PSMF*, Ex. 13 (illustrating property south of the "Line 1-A" border between the North and South Strip).) In other words, Dring and Asaro claim that the 2001 Plan subdivides a property that does not appear on that Plan. Second, Dring and Asaro did not acquire the West Shore Strip until the end of 2001, months after the 2001 Plan was submitted. Third, the 2001 Plan does not properly illustrate the width of the West Shore Strip. *See Ariel Land Owners, Inc. v. Dring*, No. 01-0294, 2008 WL 3837482, at *1 (M.D. Pa. Aug. 13, 2008). Instead, it appears–as Plaintiffs' counsel highlighted on the 2001 Plan at oral argument–to document the area of the 2001 Plan that bordered Lake Ariel. Again, this is not a depiction of the West Shore Strip. Finally, it appears that the purpose of the 2001 Plan was to combine the lots marked "Parcel 1" and "Parcel 2" to form "Parcel 1R," not to subdivide the West Shore Strip. The map illustrating the 2001 Plan states: "Parcel 1 must be combined with Parcel 2 to form one new lot and cannot be subdivided, conveyed or sold separately or apart therefrom without prior Township approval. Henceforth, the combined parcel shall be known as Parcel 1R."

Based on these facts, there is no genuine dispute of material fact: Dring and Asaro failed to obtain subdivision approval and thus failed to satisfy the Settlement Agreement's condition precedent.

(3)  Futility Doctrine

While subdivision approval was not properly obtained, Dring and Asaro argue that they were not required to obtain that approval. In Pennsylvania, the "law will not require a person to do a vain and useless act." *Erkess v. Eisenthal*, 354 Pa. 161, 164 (1946)(citing *Sidle v. Kaufman*, 345 Pa. 549, 554 (1942) (". . . the vendee is relieved of all necessity of making a tender *as condition* of specific performance, on the ground that the law does not require the doing of a vain and utterly useless act. . . ." (emphasis added)); *see also*

13

*Commonwealth v. Gerlach*, 20 Pa. D. & C.2d 290, 297 (Pa. C.C.P. 1959); *cf. Allbrand Discount Liquors, Inc. v. Times Square Stores Corp.*, 399 N.Y.S.2d 700, 701 (N.Y. App. Div. 1977) ("Once it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent."); *Concorde Fin. Corp. v. Value Line, Inc*., No. 03-8020, 2004 WL 1687205, at *4 (S.D.N.Y. Jul. 26, 2004) ("[O]nce one party has made clear it will not proceed with the contract there is no reason to require the other party to perform obligations [including a condition precedent] that would be futile or even injurious."). Courts in Pennsylvania have considered acts "vain and useless" when they follow repudiation of an agreement. *See Erkess,* 354 Pa. at 164. In layman's terms, a plaintiff is "not required to doggedly pursue a contract that is no longer viable." *Concorde Fin. Corp*., 2004 WL 1687205, at *4.

To find that ALO repudiated[7] the Settlement Agreement, Dring and Asaro are required to show either that ALO made "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pennsylvania Ave. Corp. v. Fed'n of Jewish Agencies*, 489 A.2d 733, 737 (Pa. 1985); *see also Edwards v. Wyatt*, 335 F.3d 261, 272 (3d Cir. 2003); *Oak Ridge Constr. Co. v. Tolley*, 504 A.2d 1343, 1346 (Pa. Super. Ct. 1985).

Here, ALO repudiated the Settlement Agreement. On November 8, 2013, Joseph O'Brien, counsel for ALO, sent a letter to Dring and Asaro's attorney, Michael Profita. There, O'Brien explained that "a number of the neighboring property owners are now claiming that [ALO does] not have a right to give you an easement over Cardinal Lane." He continued, "it seems to me that we have a problem." By the summer of 2015, O'Brien had informed

---

[7] In this context, repudiation is being analyzed for the sole purpose of determining whether Plaintiffs' performance would have been futile. Notably, Plaintiffs have not asserted an independent claim premised on an anticipatory breach in their Amended Complaint.

others–and Dring and Asaro learned–that "ALO did not have good title to Cardinal Lane." Acknowledging that ALO did not have proper title to provide an easement over Cardinal Lane, ALO proposed a Confirmatory Deed to the Culottas, the actual owners of Cardinal Lane. But ALO failed to deliver the Confirmatory Deed, and the Culottas filed a Quiet Title Action against ALO. Moreover, since the filing of this suit, the Pennsylvania Court of Common Pleas has concluded that ALO does not possess marketable title to Cardinal Lane. As such, ALO would be barred from conveying the easement outlined in Section 5 of the Settlement Agreement to Dring and Asaro.

Additionally, Dring and Asaro sent a letter to ALO seeking assurances that ALO could provide the easement as set forth in Section 5 of the Settlement Agreement. Specifically, the letter noted that "in the event adequate written assurances are not forthcoming within thirty (30) days . . . we will deem ALO to be in material breach of its obligations under the Settlement Agreement." This letter indicated that it would be "pointless to continue" performance if ALO could not assure them that it had marketable title to Cardinal Lane. ALO failed to offer assurances. Still, Dring and Asaro sought to provided ALO another opportunity to show that it could convey an easement over Cardinal Lane; they scheduled a closing for November 18, 2014. ALO did not appear.

Based on (1) the statements of O'Brien, (2) ALO's failure to obtain marketable title to Cardinal Lane, (3) ALO's failure to provide assurances, and (4) ALO's failure to attend the closing, I will conclude that ALO made clear that it would not perform under the Settlement Agreement. Therefore, I find the ALO repudiated the Settlement Agreement.

Even though ALO repudiated the Settlement Agreement the futility doctrine, as applied to these facts, acts as a shield, not a sword. There is no question, Plaintiffs are shielded from a claim that they breached the Settlement Agreement because it would have been futile to satisfy the condition precedent. *See Erkess*, 354 Pa. at 164; *Jonnet Dev.*

15

*Corp. Dietrich Indus., Inc.*, 463 A.2d 1026, 1032 (Pa. Super. Ct. 1983). But they may not–as they attempt to do here–wield futility to assert a claim premised on a duty that would have been owed had the condition precedent been satisfied. "It is true that an anticipatory repudiation by [one party] will discharge [another's] duty to perform a condition precedent." *Boro Constr., Inc. v. Ridley Sch. Dist.*, 992 A.2d 208, 217 (Pa. Commw. Ct. 2010) (citing *Jonnet Dev. Corp. v. Dietrich Indus., Inc.*, 463 A.2d 1026, 1032 (Pa. Super. Ct. 1983)). However, "the repudiation discharges the obligee's duty only if it actually causes the obligee to fail to perform." *Theobald v. R.H. Kuhn Co., Inc.*, No. 342 WDA 2016, 2017 WL 1041394, at *4 (Pa. Super. Ct. Mar. 17, 2017) (citing *Empire Properties v. Equireal, Inc.*, 674 A.2d 297, 305 n.5 (Pa. Super. 1996)); *see also Bennington Foods, LLC v. Croix Renaissance Grp. LLP*, No. 06-154, 2010 WL 1608483, at *10 (E.D. Pa. Apr. 20, 2010). Here, Plaintiffs have failed to offer any evidence to indicate that their failure to perform resulted directly from Plaintiff's repudiation. Rather, it appears Plaintiffs believed they had performed. As explained above, they have not. Presently, Plaintiff's application for subdivision of the Western Shore Strip remains on hold and they continue to argue that subdivision approval has already occurred. Therefore, while ALO's repudiation protects Plaintiff's from suit, it does not provide a basis for Plaintiff's breach of contract claim.

At bottom, Dring and Asaro did not satisfy the condition precedent and they are unable to discharge the condition precedent under the guise of futility. As such, ALO owed no duty to either Plaintiff. Thus, Plaintiff's breach of contract claim fails and their Motion for Partial Summary Judgment will be denied in part. Further, for the same reasons, ALO's Motion for Summary Judgment will be granted in so far as it focuses solely on the claim raised in Count I of the Amended Complaint.

**B.** **Plaintiffs Motion for Partial Summary Judgment: ALO's Counterclaim**

Dring and Asaro also assert that judgment should be entered in their favor with

respect to ALO's counterclaim. In its counterclaim, ALO alleges that Dring and Asaro breached the Settlement Agreement when they failed to timely obtain subdivision approval. Since ALO did not possess title to Cardinal Lane, it repudiated the Settlement Agreement, which in turn made it futile for Dring and Asaro to satisfy the condition precedent. As discussed above, ALO is unable to pursue an action against either Dring or Asaro because of their failure to perform an "utterly useless act." Therefore, Plaintiffs' Motion for Partial Summary Judgment on ALO's counterclaim will be granted.

## IV. Conclusion

For the above stated reasons, Plaintiffs' Motion for Partial Summary Judgment will be granted in part and denied in part, and Defendant's Motion for Summary Judgment will be granted. As no claims remain, this case will be marked closed.

An appropriate order follows.

 8/16/2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge